## Sattler *v.* Opperman.

*Oil and gas lease—Ownership of lessee's chattel—Conversion thereof by lessee.*

A landlord who recovers the right to possession, by an action of ejectment under an oil and gas lease, does not become the owner of the lessee's tools and personal property left by him on the premises, and an action will lie against the lessor for conversion of the chattels after refusal upon demand to deliver the same.

*Oil and gas lease—Conversion of personalty—Statute of limitations.*

Pending a dispute as to the right of possession under the lease the statute of limitations does not begin to run against the lessee touching the ownership of the personal chattels left on the demised premises by reason of a notice from the lessor to the lessee to remove his tools and other personal property.

Argued April 26, 1900.    Appeal, No. 135, April T., 1900, by defendant, in a suit of John Sattler against Frederick Opperman, from judgment of C. P. No. 3, Allegheny Co., May T., 1899, No. 94, on verdict for plaintiff.    Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.    Affirmed. Opinion by W. D. PORTER, J.

Trespass.　Before Evans, J.

The facts sufficiently appear in the opinion of the court.

Defendant submitted among others the following points:

[1. The request of defendant and refusal of plaintiff to remove the goods from defendant's property was a consent on the part of the plaintiff to the running of the statute of limitation in an action for their value. *Answer:* Refused.] [1]

[2. That if the jury believe that the defendant requested the plaintiff to take his personal property off his farm (plaintiff having ceased working on the wells he was drilling and refused to proceed after notice) more than six years before he brought this suit, the statute is a bar to this action, and their verdict should be for the defendant. *Answer:* Refused.] [2]

[4. That under the terms of the lease offered in evidence, the plaintiff had no right to remove the personal property after the expiration of the lease, and after the verdict in the ejectment case at No. 655, December term, 1892. *Answer:* Refused.] [3]

Verdict and judgment for plaintiff for $1,500.　Defendant appealed.

*Errors assigned* were (1–3) refusal of defendant's points, reciting same.

*Lewis McMullen,* for appellant.—Where a man has knowledge of his rights or the means of ascertaining such knowledge and refuses to take advantage of his knowledge or take pains enough to inquire into the matter, the statute is held to run against him.　In fact, Sattler was a trespasser from the time of the committing of the breaches of the covenants of his lease in the summer of 1892.　The full knowledge of his right to remove the fixtures from Opperman's farm, his refusal to do so, certainly does not give him the right to take advantage of his own wrongdoing and maintain an action of trover to recover the value of the same, almost seven years thereafter: Gas & Water Co. v. Iron & Coal Co., 167 Pa. 136.

The third assignment of error is to the refusal of the court to affirm the fourth point of defendant.　That point raises the question as to the right of a tenant to remove fixtures from the

leased premises after the expiration of the term of the lease or to maintain an action in trover to recover their value: Heintz v. Shortt, 149 Pa. 286; Wills v. Gas Co., 130 Pa. 222; Overton v. Williston, 31 Pa. 155; David v. Moss, 38 Pa. 346.

*Archibald H. Rowand,* with him *Harry H. Rowand,* for appellee, relied on Cassell v. Crothers, 193 Pa. 359, and Wick v. Bredin, 189 Pa. 83.

OPINION BY W. D. PORTER, J., May 24, 1900:

The defendant executed an oil and gas lease of his farm to the plaintiff and another, "for the term of one year and so long thereafter as oil or gas can be produced in paying quantities." The lease was dated February 12, 1890. The lessees formed a company, of which they were members, for operating the lease, and the plaintiff entered into a contract with the company for the drilling of the wells; he furnished his own tools and machinery. In the year 1892, after the plaintiff had suspended operations in drilling the wells for some time, the defendant brought an action of ejectment, and on February 2, 1894, obtained a verdict, against the plaintiff and his associates, in that action. At the time this verdict was obtained there was a considerable amount of personal property belonging to the plaintiff, on the premises which, subsequently to the verdict, the defendant declined to permit the plaintiff to remove. The plaintiff, alleging that the defendant had converted the property to his own use, brought this action to recover the value thereof.

The defendant sought to interpose the bar of the statute of limitations to the plaintiff's claim, and in support of that position offered evidence tending to establish that the defendant before bringing the action of ejectment, in 1892, had insisted upon the plaintiff's going on and finishing a well which was then being drilled. The defendant testified in answer to a question by the court: "Q. Counsel has asked you what was said between you and Mr. Sattler. You will confine yourself to that. A. Well, he wouldn't finish the well, and I told him if he don't want to finish the well, I will sue him; I told him if he don't want to finish the well to take his tools away, and if he don't take his tools away I will sue the whole company.

Q. Well, what did he say to that? A. Well, he told me he wouldn't take his tools away, he wanted somebody to pay for the tools for him. Q. And that he wouldn't take them away? A. He won't take them away; he wanted somebody to pay for his tools. Q. Well, what did he say when you asked him to finish the well? A. He wouldn't do it. They told me they had a lease for ninety-nine years." There was other evidence to the effect that the defendant had requested the plaintiff to remove his personal property and withdraw from operations under the lease prior to the bringing of the action of ejectment. The plaintiff testified that shortly after the verdict in the action of ejectment, he went to the house of the defendant and had a conversation with him about the personal property in question, and that the defendant then claimed that all the personal property belonged to him, the defendant; that he subsequently demanded the property and the defendant refused to permit him to take it, with the exception of a small boiler. When the defendant was called by the plaintiff as for cross-examination, he testified as follows: " Q. And after you got that verdict you claimed everything on the farm, you claimed this machinery and everything else? A. That is what my lawyer told me, he says everything belongs to you and you go and sell it. Q. That was after this verdict? A. Yes, sir." There is no question that after the verdict on February 2, 1894, the plaintiff demanded this personal property and the defendant claimed it as his own, and refused to deliver possession. There is no evidence whatever which tended to establish a conversion of the property by defendant prior to the verdict on February 2, 1894, and the action in the present case was brought on February 28, 1899. In the first and second requests for charge presented to the learned court below by the defendant, the refusal of which is made the foundation for the first and second specifications of error, the learned court was, in effect, requested to charge the jury that if they believed the defendant requested the plaintiff to take his personal property off the farm (plaintiff having ceased working on the wells he was drilling, and refused to proceed after notice) more than six years before he brought this suit, the statute is a bar to this action and their verdict should be for the defendant. These points were very properly refused; if the facts were as stated in the points they did not

constitute a conversion of the personal property, and they were evidence that the plaintiff had not up to that time asserted any title to it. The right of the plaintiff to use the land, under the oil and gas lease, was disputed. The defendant, by bringing his action of ejectment, recognized the plaintiff in the present action, and his associates, as being in possession of the land, and evidence that the present defendant had requested the plaintiff to remove his personal property from the disputed land was no evidence of a conversion of that property to the defendant's use. The first and second assignments of error are dismissed.

The third specification of error relates to the refusal of the court to charge that "under the terms of the lease offered in evidence the plaintiff had no right to remove the personal property after the expiration of the lease and after the verdict in the ejectment case at No. 655, December term, 1892." There is no authority for the suggestion that a tenant who does not succeed in getting all his personal property away from the leased premises before the expiration of his lease forfeits that property to his landlord; nor can it be successfuly maintained that he who, in an action of ejectment, recovers the right to possession of a farm and establishes his title to the land, at the same time becomes the owner of the farming implements, cattle and horses which happen to be upon the premises at the time of the rendition of the verdict. Every question raised by this specification of error has been squarely ruled in the recent cases of Wick v. Bredin, 189 Pa. 83, and Cassell v. Crothers, 193 Pa. 359, and further comment is unnecessary.

Judgment affirmed.