Waltman et al., Appellants, *v.* Mayer.

Argued October 8, 1929.

Before PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Wm. Custer Waltman,* and with him *George W. Ott,* for appellant.

*W. Horace Hepburn, Jr.,* for appellee.

OPINION BY LINN, J., November 22, 1929:

As the non-suit was properly entered for want of proof that the two mirrors in question were part of the realty—that is, a part of the house—we shall not stop to consider whether the plaintiffs showed any right to sue, as no argument was made on the point.

After the death of John B. Mayer, owner of premises 4400 North Broad Street, Philadelphia, disputes con-

cerning the devolution of his property arose and were settled by agreement made by defendant and some or all of the other parties to this case. It was agreed that she "was entitled to the household furniture and furnishings in premises 4400 North Broad Street." When she moved out, she took with her two mirrors. The plaintiffs alleged that the mirrors are not "household furniture and furnishings" and that their removal resulted in "damage to the freehold in not less than $2,500." Defendant is also charged with having converted the mirrors to her own use. They appear to have been about 4 by 5 feet in size. The allegation is that when decedent brought the mirrors to the house he fastened them to the walls with the intention that they should become a part of the real estate. On that subject but two witnesses testified: decedent's son, and the defendant, who was also called for cross-examination. Both agreed that after the house was built by decedent and papered throughout, the mirrors with other furniture and furnishings were brought from the residence in which he had theretofore lived. They also agreed that the mirrors were hung on the walls. The son testified that "there is a moulding attached to the mirror, and it is in turn nailed into place. The plaster was not cut, but the moulding was nailed directly to the plaster. Q. The moulding was nailed into the wall? A. Yes, so as to hold the moulding into place. Q. In the frames of those the mirror was placed? A. Yes, the moulding was placed against wall, against the frame itself, the mirror was brought from Broad Street, one of which had a frame on. The moulding was attached to the frames and in turn nailed to the wall." The defendant testified (where uncontradicted, her testimony binds plaintiffs: Dunmore v. Padden, 262 Pa. 436), that the two mirrors she took were "lifted off of the hooks." She said that where removed they left exposed the wall paper as originally

placed there. She denied that any damage was done to the walls. She further said that one of the mirrors had been part of "a suit of furniture" in their possession. Appellants contend that the evidence should have been submitted to the jury to enable it to determine whether the mirrors were hung on the walls with the intention to make them a part of the real estate. It was not sufficient to support such a finding.

If we understand the argument for appellants, it comes to this: that from the fact that mouldings were nailed to the wall to hold the mirror in place, the jury should be permitted to infer that decedent's intention was to make it part of the real estate. That contention disregards the other evidence in the case, as well as the rule applicable. In Hill v. Seweld, 53 Pa. 271, 274, it is said "The old common law criterion of physical attachment was exploded in this State by GIBSON, C. J., in Voorhees v. Freeman, 2 W. & S. 116 ......;" see also Dravo Contracting Co. v. Grambling, 45 Pa. Superior Ct. 72, 75. "On the contrary, the question of fixture or not depends on the nature and character of the act by which the structure is put in place, the policy of the law connected with its purpose, and the intentions of those concerned in the act;" Meigs' Appeal, 62 Pa. 28, 33. The other evidence in the case which must be considered is that after decedent built the house and had it completely papered, he moved his furniture and furnishings into it from the house that he had sold; that these two mirrors were ordinary personal property and came with the other stuff and that they were hung on hooks from which, as defendant testified, they could be, and were in fact, lifted when she moved out. They were not structural elements of the building or articles which ordinarily are part of a building in the sense that it becomes real property; they could be, as in fact they were, removed without damage or other interference with the real estate. If

there was any damage to the wall by the manner in which they were removed, no evidence was offered as to the cost of the repair or resulting diminution of market value. There is no evidence of any undisclosed purpose of the decedent in bringing the mirrors into his house; in such case the law looks at "the intention implied and manifested by his acts": Straight v. Mahoney, 16 Pa. Superior Ct. 155, 158; Nat. Bank v. North, 160 Pa. 303; Wick v. Bredin, 189 Pa. 83, 92; McClintock Co. v. Aetna Co., 260 Pa. 191, 196. Cases may, of course, be found, like some cited by plaintiffs, where there is such dispute about the facts from which the intention would be inferred as to require the submission of the evidence to the jury to determine the fact; but where as here, there is no such dispute, a non-suit is proper. The case of Spinney v. Barke, 43 Ill. App. Ct. Rep. 585, relied on by appellants, differs in facts from this, though the court applied the same legal principle; in that case, it appeared that in addition to the manner in which the mirror was fastened to the chimney, a part of the evidence of intention to annex the mirror to the freehold was the fact that the defendant had sold the house to plaintiff with the mirror in place, and had been paid for it before he tore out the mirror. McKeage v. Hanover Fire Ins. Co., 71 N. Y. 38, and Cranston v. Beck, 70 N. J. L. 145, both involving mirrors, and Leigh v. Taylor L. R. [1902] A. C. 57, involving tapestries, were cited by appellee, and show the application of same principle.

Judgment affirmed.