# O'Donnell v. Schneeweis

*Terry W. Knox*, for plaintiffs.
*David C. Patten*, for defendants.

SUGERMAN, *J.*, April 11, 1975—Plaintiffs filed a complaint in two counts against defendants, the first count, in assumpsit, alleging that plaintiffs and defendants entered into a written agreement of sale whereby plaintiffs agreed to purchase certain real property and improvements thereon from defendants and which agreement provided further that all fixtures attached to the property were to remain thereon.

Plaintiffs further allege that notwithstanding such provision, and in violation thereof, defendants, following execution of the agreement, removed certain specified fixtures from the property, thereby damaging the premises.

By the second count of the complaint, in trespass, plaintiffs seek the value of the fixtures so removed, alleging defendants converted the same to their own use, in derogation of plaintiffs' title thereto.

Defendants, by answer, deny the material allegations of the complaint although admitting the removal of some items, and aver, inter alia, that the items so removed were the personal property of defendants, not intended to pass to the ownership of plaintiffs. Defendants further assert that one of the items was removed prior to the execution of the agreement, and another such item was not removed by defendants at all. With the issues so drawn, the matter was tried and argued before the court sitting without a jury.

The parties agree that the following articles were removed from the premises by defendants subsequent to execution of the agreement of sale: (1) wall-to-wall carpeting in place in three rooms of the building; (2) a full length mirror affixed to a door in the said building; (3) a wall mirror and glass or spectacle cases; (4) cafe doors; and (5) a wall rack.

Plaintiffs assert that such articles were either "fixtures" included within an unnumbered paragraph in the agreement of sale, or "permanent improvements to the realty," title to which passed to plaintiffs along with title to the realty.

A vendor and purchaser may, of course, specifically agree that chattels affixed to the realty are to be treated as fixtures passing with the realty or, conversely, they may agree that such fixtures are to be detached and treated as personalty: Wick v. Bredin, 189 Pa. 83, 42 Atl. 17 (1899); In re Rodgers & Hite, 143 Fed. 594 (1906); 16 P. L. E., Fixtures §6. The paragraph in the agreement of sale at bar upon which plaintiffs rely to sustain their position follows:

"The gas and electric fixtures, heaters, ranges, etc., annexed to the said building are included in the sale, as also any water pipe laid on any street bounding said lot, except for refrigerators located on 2nd and 3rd floor."

Notwithstanding the inartful use of the word "etc." in the clause, it appears evident that the parties intended only gas and electric fixtures, heaters, ranges, water pipes in any street abutting the premises, and chattels of a similar nature, to be the items included within the clause. Hence, the question of whether the disputed items are fixtures, title to which was intended to pass with the realty, must be resolved within the framework of the well-established principles relating to fixtures.

A "fixture" is an article of personal property which, by reason of physical annexation to a building, becomes in legal contemplation a part of the real estate: Morris's Appeal, 88 Pa. 368 (1879); 16 P. L. E. Fixtures §1.

Chattels used in connection with real estate are of three classes: First, those which are manifestly furniture as distinguished from improvements, and not particularly fitted to the property with which they are used; such chattels always remain personalty: Clayton v. Lienhard, 312 Pa. 433, 167 Atl. 321 (1933); Jarechi v. Philharmonic Society, 79 Pa. 403 (1876). The second class consists of those chattels so annexed to the property that they cannot be removed without material injury to the real estate or to the chattels themselves; such chattels are realty, even in the face of an expressed intention that they should be considered personalty: National Bank of Catasauqua v. North, 160 Pa. 303, 28 Atl. 694 (1894); Clayton v. Lienhard, supra. The third class includes those chattels which, although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed; such chattels become part of the realty or remain personalty, depending upon the intention of the parties at the time of annexation: American Laundry Mach. Co. v. Miners Trust Co., 307 Pa. 395, 161 Atl. 306 (1932); Clayton v. Lienhard, supra; Royal Store Fixture Co. v. Patten, 183 Pa. Superior Ct. 249, 130 A. 2d 271 (1957).

Lastly, we note that as between a vendor and a purchaser, the question of whether an article is to be regarded as a fixture, title to which passes to the purchaser, is to be construed most strongly against the vendor: Batcheler v. Lally, 66 D. & C. 25, 28 (1948). We turn then, to an examination of each article in dispute.

### Wall-to-Wall Carpeting

Our research fails to reveal and counsel cite no authority bearing specifically on the question of

whether wall-to-wall carpeting is a fixture. We believe, however, on this record, that such carpeting falls within the third class of chattels enumerated above, and in so deciding, we must determine the intention of defendants at the time of installation.

To be sure, wall-to-wall carpeting, although generally cut to fit specific floor areas, may be re-cut and thus re-used. Further, plaintiffs' exhibits 1, 3, 4 and 6 reveal a linoleum or tile floor upon which the carpet was laid in the three rooms in question, leading us to conclude that such rooms were usable with the carpet removed.

Nonetheless, the same exhibits reveal the care and painstaking effort with which the carpet was fitted to the precise dimensions and contours of the floors by the use of woodstripping and nails. We conclude, therefore, that the carpet was specially fitted to the rooms in question and thus adapted to the permanent use and enjoyment of defendants at the time of annexation. Hence, the wall-to-wall carpet became and remains a fixture.

### Mirrors

Two mirrors are in issue, one a full-length mirror affixed to a door in the building upon the premises, and the other affixed to a wall therein. There is some appellate guidance to which we may turn in connection with mirrors.

In Waltman v. Mayer, 97 Pa. Superior Ct. 236 (1929), the question was the same: Whether a mirror was a fixture, passing with the real estate, or personalty, properly removed and retained by the vendor. At trial, the purchaser testified that molding was attached to the frame of the mirrors and, in turn, nailed directly to a wall. The seller testified to the contrary that the mirrors she took lifted off

hooks and when so removed, left merely wallpaper exposed, without damage.

The Superior Court, assuming for the purpose of argument that the mirror was nailed to the wall by its molding nevertheless held it to be personalty and said, quoting with approval Hill v. Sewald, 53 Pa. 271 (1867):

" 'the question of fixture or not depends on the nature and character of the act by which the structure is put in place, the policy of the law connected with its purpose, and the intentions of those concerned in the act.' ": 97 Pa. Superior Ct., at page 239; and further:

"The other evidence in the case which must be considered is that after [vendor] built the house and had it completely papered, he moved his furniture and furnishings into it from the house that he had sold; that these two mirrors were ordinary personal property and came with the other stuff and that they were hung on hooks from which, as [vendor] testified, they could be, and were in fact, lifted when she moved out. They were not structural elements of the building or articles which ordinarily are part of a building in the sense that it becomes real property; they could be, as in fact they were, removed without damage or other interference with the real estate. If there was any damage to the wall by the manner in which they were removed, no evidence was offered as to the cost of the repair or resulting diminution of market value. There is no evidence of any undisclosed purpose of the [vendor] in bringing the mirrors into his house; in such case the law looks at 'the intention implied and manifested by the acts' ": 97 Pa. Superior Ct., at 239-40.

The wall mirror at bar appears to fall clearly

within the factual setting of Waltman v. Mayer, supra. Accordingly, we find that the wall mirror was personalty, not intended to become a fixture, and properly removed by defendants.

We note, however, that the mirror on the door appears to have been attached with the intention to make it a permanent part thereof. The mirror was obviously cut and fitted to the door. Upon its removal, unseemly molding remained and the door presents the appearance of an unfinished structural member. Accordingly, we conclude that defendants intended the door mirror to be a fixture and so find.

### Glass or Spectacle Cases and Wall Racks

A part of the building was used as the professional office of defendant, Oscar A. Schneeweis, an optometrist. In connection with such profession, spectacles were displayed on racks and in cases or cabinets. The photographic exhibits appear to indicate that these items were fitted to and built into the walls of the building upon the premises and, as such, became a part of the real estate at the time of annexation within the second enumerated category, above. At the very least, it appears that upon annexation, defendants intended that the glass or spectacle cases and wall racks become fixtures within the third enumerated category, above.

### Shutters

Plaintiffs aver that two pairs of shutters, affixed to windows inside the building were improperly removed by defendants subsequent to the execution of the agreement of sale. Defendants admit the

removal thereof but assert that such removal occurred prior to execution of the agreement. The issue is initially one of credibility, and we resolve it against defendants, finding that the shutters were removed by defendants following execution of the agreement of sale.

The photographs in evidence show no damage whatever resulting from the removal of shutters. Although we do not consider the manner of physical annexation as controlling, it is clearly an important test to determine the intention of defendants at the time of annexation. Unlike articles as screens which might be specially fitted and yet easily removed for storage during winter months, we find no sound reason for shutters to be so easily attached were it not the intention of defendants at the time of annexation that the same might be permanently removed. Accordingly, we conclude that the shutters were and remain personalty, properly removed by defendants.

## Cafe Doors

The cafe doors in issue appear to be the so-called "swinging" or "saloon" type doors attached to the walls of a passage-or-entryway between two rooms in the building.

The testimony indicates that the doors appeared to be fitted to the passageway and permanently affixed by hinges. Accordingly, we conclude that defendants intended at the time of annexation that such cafe doors become and remain a part of the realty, as fixtures.

## Lighting Fixture

Although defendants deny removing a lighting fixture from one of the rooms in the subject build-

ing, we need not reach that issue inasmuch as the lighting fixture must be considered to be within a class similar to chandeliers which have been held to be personalty: Vaughen v. Haldeman, 33 Pa. 522 (1859). Thus, we find that the lighting fixture here involved was never intended to become a fixture when installed.

## Value

On January 7, 1966, defendants purchased 77 and 1/2 square yards of carpeting, and caused the same to be installed at the price of $10 per yard, or the total price of $772.72. The credible evidence indicates that the carpet, made of nylon, at the time of removal, was neither worn nor otherwise damaged. At the time of removal, it was nearly seven years old. Defendants' exhibit 1, purporting to be a carpet depreciation schedule, indicates that carpet costing $10 per square yard is fully depreciated in six years, and has no value thereafter. We do not accept that postulation, however, in view of the qualifying language contained in the schedule itself:

"(The maximum wear or life of any broadloam carpet or rug on the market, regardless of initial cost or price, is set at a maximum of 10 years.)"

Surely, nylon carpet with little visible wear has *some* value in its seventh year. We prefer to accept as the proper measure, a maximum life of ten years as suggested in defendants' exhibit 1, and apply a fixed annual depreciation at the rate of ten percent. Thus, the carpet has depreciated in value approximately 67 percent, and 33 percent remains. We value the carpet, therefore, on the date defendants removed the same, in the sum of $255.

The credible evidence also reveals that the door mirror is fairly valued at $10, the glass or spectacle cases at $20, the cafe doors at $25, and the wall racks at $10, or the total additional sum of $65.

## ORDER

And now, April 11, 1975, judgment is entered in favor of plaintiffs and against defendants in the sum of $320, together with interest thereon computed at the lawful rate from September 1, 1971.