## S. J. BENEDICT v. BOYD MARSH.

ERROR TO THE COURT OF COMMON PLEAS OF WARREN COUNTY.

Argued May 8, 1889—Decided June 28, 1889.
[To be reported.]

1. Where, in determining whether an engine, boiler and machinery in a saw-mill upon land sold at sheriff's sale are part of the realty or not, the testimony as to the actual character of the structure, whether movable or permanent, is conflicting, the issue becomes a question of fact for the jury: Harmony B. Ass'n v. Berger, 99 Pa. 320.
2. In such case, should the jury be unable to find, from the conflicting testimony, that the mill was in fact a permanent structure, proof of the ante litem motam declarations of the owner and builder may be considered as evidence of his purpose at the time the mill was erected.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

No. 221 January Term 1889, Sup. Ct.; court below, No. 24 December Term 1887, C. P.

On September 30, 1887, S. J. Benedict brought replevin against Boyd Marsh for certain saw-mill machinery of the value of $1,107. The defendant pleaded non cepit, property in himself, with leave, etc.

At the trial on October 5, 1888, it was made to appear that in 1887 and prior thereto A. R. Kilburn was the owner of land on which he had erected a steam saw-mill. The structure was a

Charge of Court below.

building erected over a small stream of water, upon sills leveled by being sunk into the ground on each side of the stream. The engine was set on a block, imbedded in the ground and bolted to the sills. The boiler was placed near by on a stone foundation. A frame was made of $2 \times 4$ stuff, and covered with boards.

On January 26, 1887, Benedict obtained judgment against Kilburn, which became a lien upon the land on which the mill was erected. Execution was issued upon the judgment, and the land was sold on September 26, 1887, to Benedict. After the sheriff's sale, Boyd Marsh, the defendant, removed the engine, boiler and machinery from the mill and from the land, when Benedict brought this suit.

The defendant introduced testimony to show that on June 6, 1887, Kilburn, being in debt to Wm. L. Marsh, defendant's father, for $1,000 borrowed money, transferred the mill to Marsh by bill of sale in writing, who then transferred it to the defendant. The two Marshes and Kilburn went to the mill and the defendant was put in possession.

N. J. Whitcomb called by defendant:

Defendant proposed to show by the witness that the witness and Mr. Kilburn, in December, 1885, went to Mr. Benedict (the plaintiff) and stated to him that he, Kilburn, wished to purchase a portable saw-mill, one that could be moved on to several tracts of land that he had, and from one to another, for the purpose of cutting timber, and that he purchased the mill in question for that purpose.

Objected to as incompetent and irrelevant.

By the court: Objection overruled; exception.[1]

A. W. Day, a sawyer upon the mill, called by defendant:

Q. Did you have any conversation with Mr. Kilburn in the winter of 1886, as to what he was going to do with this mill after finishing the timber on the Flatt lot?

Objected to as incompetent and irrelevant.

By the court: Objection overruled; exception.[2]

The testimony of the witnesses admitted under these offers, appears in the opinion of the Supreme Court.

The court, Brown, P. J., after stating the facts, charged the jury:

Charge of Court below.

The case then stands in this way : If the mill with its necessary equipments was personal property at the time Wm. L. Marsh bought it, then the judgment of Mr. Benedict was not a lien, and the verdict should be for the defendant. But, on the other hand, if the mill was a part of the real estate, then your verdict should be for the plaintiff. That is where the question is in this case. What was the character of the mill and its equipment? Was it a part of the real estate?

We say to you, as making a distinction between the owner of land and a tenant, if the owner of land erects a saw-mill on his own land as the evidence shows Mr. Kilburn did, the mill becomes real estate provided it is in its character a permanent structure. And by permanent we mean one whose character itself indicates permanency; when it is built in the manner in which persons building saw-mills usually build permanent mills; a structure that would be immovable without taking down and destroying its character as a mill. If, in this case, the structure was of such a permanent and substantial nature, it became real estate; and we say to you, that if in its character it is permanent, it cannot be changed by evidence showing that Mr. Kilburn, when he built it, intended to remove it from the tract when the timber on it should be exhausted. There are many structures in the way of manufacturing that probably it is intended at some indefinite time in the future to remove, when the material necessary to their operation has become exhausted. But that intention, we say to you, does not change the essential character of the property itself. The intention of Mr. Kilburn cannot affect it. It is the character of the mill itself for permanency that determines its character as realty. What was the character of the mill in this case? Was it a permanent structure? Was it of a character, like a portable mill upon wheels, that it could be moved, or was it in its nature permanent? If it was, we say to you that it was real estate, and the plaintiff is entitled to a verdict. We repeat, that the mere intention of Mr. Kilburn to remove it when the timber was exhausted, would not change the character of the mill itself.

The plaintiff requests the court to charge :

1. That the mill, being erected by Kilburn on the land owned by him, is presumed to be real estate.

Answer: We say to you that this depends upon the question whether the mill was a permanent one; if it was a permanent structure, although Mr. Kilburn may have intended to remove it at some future time, it was real estate, notwithstanding the intention of Mr. Kilburn.

The defendant requests the court to charge:

1. The plaintiff, S. J. Benedict, cannot recover in this case unless the jury find from the evidence and believe that A. R. Kilburn intended that the boiler, engine, mill and machinery should be permanent and a part of his land.

Answer: We answer this point by saying, as we have said in the general charge, that the intention of A. R. Kilburn would not affect the question, if the building was a permanent building.

2. If the jury believe that the boiler, engine, mill and machinery were not intended by A. R. Kilburn to be permanent and a part of his land, the verdict should be for the defendant.

Answer: We answer this point by saying, that notwithstanding Mr. Kilburn may have intended the mill to remain only for a time when there was a supply of timber, yet if the building itself was a permanent structure, it was real estate. Otherwise, if it was not a permanent structure, not of a substantial, permanent kind, but in its character movable, then it would be personal property, and the verdict should be for the defendant.

3. If the jury believe that the mill and machinery was a mere temporary structure, to be again moved to other tracts, after the timber on the land upon which the mill was erected was exhausted, then it was personal property and the verdict should be for the defendant.

Answer: This point is affirmed in connection with the instructions that we have given you as to what constitutes a permanent structure.

4. If the jury believe that the mill and machinery was personal property, and not a fixture, the verdict should be for the defendant.

The jury returned a verdict in favor of the defendant. A rule for a new trial having been discharged, the plaintiff took this writ, assigning for error:

1, 2. The admission of defendant's offers.[1] [2]

*Mr. W. E. Rice* (with him *Mr. R. Brown, Mr. C. W. Stone* and *Mr. H. E. Brown*), for the plaintiff in error:

That the machinery in a mill is real estate; that unless detached before sale it passes with the freehold by a sheriff's sale, are settled propositions: Harlan v. Harlan, 15 Pa. 507; Harlan v. Harlan, 20 Pa. 307. The only cases that hold that intention in any way affects the character of property, as personal or real estate, are where questions arise between landlord and tenant, concerning fixtures, as in Seeger v. Pettit, 77 Pa. 437, or where the structure is of such an equivocal character as to make the question depend upon intention, as in Harmony Building Association v. Berger, 99 Pa. 324. The saw-mill, in this case, was not of such equivocal character, and, therefore, evidence of intention should not have been admitted under the authority of the last above cited case.

*Mr. W. W. Wilbur* (with him *Mr. Wm. Schnur*), for the defendant in error:

Three witnesses on the part of the defendant testified that this mill was of a temporary character, portable and removable. Four witnesses on the part of the plaintiff testified that it was in character not portable but permanent. The mill was therefore of such an equivocal character as to raise a question for the jury, and in such cases the intention and the object the owner had in view in placing the mill on the land are material, physical attachment to the realty no longer being regarded: Harmony Building Association v. Berger, 99 Pa. 324; Hill v. Sewald, 53 Pa. 272; Seeger v. Pettit, 77 Pa. 437.

OPINION, MR. JUSTICE GREEN:

The only question in this case was whether the machinery in controversy was personalty or realty. The question was very fairly and correctly submitted by the court to the jury who found it to be personalty. There was conflicting evidence on the subject, and it is clear that the determination of the issue depended upon a question of fact which could only be decided by a jury.

The machinery in dispute was a certain steam engine and

saw-mill machinery put up by one Kilburn on a tract of timber land belonging to him, and used in sawing logs cut from the land. Whether the engine and machinery were portable or permanent was the question. Kilburn, the owner, had treated it as personalty by selling it to William L. Marsh, by a written bill of sale, and the latter transferred it to his son, the defendant, before the sheriff's sale of the land, but after the plaintiff's judgment against Kilburn had been entered. There was considerable testimony that the engine and machinery were portable in their character and were intended to be moved from one tract of timber land to another, to cut up the logs on each. This brought the case within the catalogue of cases of an equivocal character which require the verdict of a jury to determine. In Harmony Building Association v. Berger, 99 Pa. 320, we said: " There may be some things which are so essentially a part of the freehold that as between vendor and vendee the intention of the owner may be of little weight. But this is not such a case. The articles themselves were of such an equivocal character as to raise a jury question." That was a case in which the articles in controversy were placed in position by the owner of the premises. As between landlord and tenant, the doctrine that physical annexation alone is the test has long been exploded: Hill v. Sewald, 53 Pa. 271; Seeger v. Pettit, 77 Pa. 437. In Harmony Building Association v. Berger, supra, we said further that " the object and intention of the owner is to be regarded in considering the character of the articles."

The learned court below was very careful to say to the jury that if the character of the mill for permanency was certain, the mere intention of Kilburn to the contrary could not change it and make the machinery personalty. But we think it quite clear upon the testimony that the character of the mill for permanency was a very debatable question, and that the intention and object of the owner became very material in determining the question. In this point of view the evidence offered and received under objection and exception was highly illustrative. Thus, the witness, A. W. Day, the tail-sawyer at the mill, testified under exception as follows: " Q. What kind of a mill was it? A. It was a movable mill. I suppose the engine and boiler hung together, but it was movable and intended to move

it; that was their calculation after they cut their stock out there. Q. Did you have any conversation with Mr. Kilburn in the winter of '86 as to what he was going to do with this mill after finishing the timber on the Flatt lot? A. He said he was going to move it up to the State Line Run from there." Another witness, Whitcomb, had previously testified under objection and exception that he was the millwright who built the mill and was present with Benedict, the plaintiff, who sold the mill, and Kilburn who bought it, at the time of the sale. He was asked: " Q. State to the jury what took place there? A. He went and looked at this mill and decided on taking the saw-rig part, that is the saw-rig, carriage, and head blocks, and not the engine and boiler. Mr. Benedict wanted Kilburn to take the engine and boiler, but he said it was too heavy; he wanted a lighter rig and a portable boiler so he could move it. Mr. Kilburn said to Benedict that he had a small engine, that he would have it brought to his shop and overhaul it and if it needed any repairing he would repair it; and Mr. Kilburn wanted a new portable boiler. Q. What was said as to the character of the mill he wanted? A. He said he wanted a light rig that he could move; he said, over three different places; that he wanted to move it on different lots where there was timber to cut. Q. What did he say, if anything, about moving to different tracts of land where there was timber? A. He said he wanted to move it several times."

The foregoing is the testimony, the admission of which is complained of in the two assignments of error in this case. We see no error in its admission. It was directly upon the very point in controversy, and indicates with much force and directness the very purpose of the owner to put in portable machinery. It has the additional force of a communication of this purpose to the plaintiff himself and would be admissible for that reason. In view of the very conservative and cautious character of the charge of the court, it was not possible for the jury to be misled as to the precise question to be determined, and the considerations to be taken into account by them.

Judgment affirmed.