## Kopp v. Bashline.

*Fixtures—Personal property attached to real estate—When such property becomes fixtures—Intention of vendor of real estate to treat personal property as fixtures—Question for the jury.*

1. Plaintiff sold and conveyed a mansion-house and lot to A, and left therein certain chandeliers, electroliers and lighting fixtures incident to the building, which were specially purchased for it and connected with it at the time it was built by plaintiff, and used and enjoyed by him while he occupied it for nine years. These articles were not mentioned in the deed, but they constituted a necessary part of the lighting system, and corresponded with the interior arrangement and color scheme of the various rooms. A sold and conveyed the real estate to defendant, and, after the payment of the consideration money, plaintiff notified defendant that the articles above referred to were his property and had not been included in his conveyance to A. He requested defendant to deliver them to him or to permit him to remove them. Defendant refused, claiming they belonged to him; whereupon plaintiff brought suit for damages for trover and conversion: *Held*, it was a question for a jury whether or not plaintiff intended the articles to become part of the real estate and to pass by the conveyance of the property to A. If such was plaintiff's intention, then the articles passed to defendant under the conveyance by A, and plaintiff could not recover.

2. Under these circumstances plaintiff's intention to sell the articles to A would be presumed, but this presumption could be rebutted by evidence of a contrary intention.

3. The controlling intention was not the secret design which might have dwelt in the mind of the plaintiff and of which he alone could speak, but the intention which flowed, apparent to all, from the character of the fixtures for permanency, the mode of their annexation, and the clear purpose to be served, the manifest relation which the fixtures bore to the realty, and the visible effect of their severance therefrom.

Motion for new trial. C. P. York Co., Jan. T., 1919, No. 66.

*Cochran, Williams & Kain*, for motion; *Samuel Kurtz*, contra.

Ross, J., June 20, 1921.—After a trial by jury and verdict for the defendant, the plaintiff filed the following motion:

"And now, Sept. 21, 1920, the court are respectfully moved to set aside the verdict and grant a new trial in the above case for the following reasons:

"1. The verdict was against the law and the evidence.

"2. The verdict was against the weight of the evidence.

"3. The court erred in their answer to the plaintiff's first, second and fourth points.

"4. The court erred in their answer to the defendant's fourth, fifth and sixth points.

"5. The court erred in certain portions of their general charge.

"6. The court erred in overruling the plaintiff's offers of evidence.

"7. The court erred in admitting in evidence certain offers of the defendant.

"The right to file other and more specific reasons is hereby reserved until the stenographer's notes shall have been filed.

"(Signed)    Cochran, Williams & Kain."

The suit was in trespass, in the nature of trover and conversion.

The plaintiff's statement alleged, in substance, that the plaintiff, on and prior to Oct. 25, 1915, owned a tract of land, situate partly in Springfield Township and partly in Hellam Township, York County. There was a brick mansion-house erected on said tract of land, and the plaintiff resided therein. In said mansion-house there had been placed certain chandeliers, electroliers and lighting fixtures, more fully described in a list attached to the statement as "Exhibit A," which were used for lighting said mansion-house with gas

and electricity. That he, the plaintiff, owned certain storm doors, used by him during the winter for the purpose of protecting said mansion-house from cold; and a range and copper boiler, used by him for the purpose of cooking and providing a supply of hot water in and for said mansion-house.

On Oct. 25, 1915, he (the plaintiff), with Emma Rebecca Kopp, his wife, granted, bargained and sold the said real estate to Charles Reider.

On April 1, 1918, the said Charles Reider granted, bargained and sold the said real estate to the defendant, O. O. Bashline.

The statement also alleged that "with the knowledge and consent of the said Charles Reider, the articles mentioned in the ——— paragraphs hereof remained in the said mansion-house at and after the conveyance of the said real estate by the plaintiff to the said Charles Reider."

After the conveyance of said real estate by the said Reider to the said Bashline, defendant, plaintiff caused notice to be given to the defendant that the said articles mentioned in the statement were the property of the plaintiff, and had not been sold or delivered by him to the said Charles Reider, and requested that said articles be delivered to him (the plaintiff), or that he be granted permission to go upon the premises to take possession thereof.

The defendant failed and refused to deliver said articles to the plaintiff or to grant the plaintiff permission to go upon the premises to take possession thereof.

The damage claimed by plaintiff was based on "the cause of action" as set forth in the first and last paragraphs of the statement, and as expressed by plaintiff's counsel at the trial, "for the use and retention of the articles by the defendant."

All specific allegations by the plaintiff in the statement that the articles sued upon had not been included in the conveyances and sales of the real estate by plaintiff to Reider, and by Reider to the defendant, were specifically denied by the defendant's affidavit of defence.

The affidavit of defence avers that the property referred to in the plaintiff's statement are fixtures which were annexed to the mansion-house by the plaintiff himself as part of the permanent service system therein, and, by reason of their adaptation to use in and about, and physical annexation to, the said mansion-house, became inseparably connected therewith, and as such, in the several mutations of title, passed as a constituent part of the real estate to which annexed.

The real issue made by the pleadings and contest at the trial was: The claim by the plaintiff for damages from the defendant for the retention and use of the articles or personal property enumerated in the statement; the claim by the defendant that those articles passed into his custody and ownership by the sale and conveyance of the property from Charles Reider by agreement dated January, 1918, and by deed dated April 1, 1918, offered in evidence by plaintiff as exhibits Nos. 4 and 5.

The evidence offered by the plaintiff was intended to prove that nothing had been sold by the plaintiff to Charles Reider except the real estate described in the deed of Kopp and wife to Reider (offered and admitted in evidence as plaintiff's exhibit No. 3), and that the articles of agreement between the said Charles Reider and the defendant, dated January, 1918 (admitted in evidence as plaintiff's exhibit No. 4), and the consequent deed by Reider to the defendant, dated April 1, 1918 (admitted in evidence as plaintiff's exhibit No. 5), gave title to the defendant to nothing but the real estate described in said deeds and agreement; that the articles enumerated in the plaintiff's statement of demand were personal property and were not so attached to the real estate

1 D. & C.

described in the deeds of conveyance as would make them such fixtures as would pass with the real estate.

The undisputed facts show that the articles in question were delivered with the real estate described in the deeds of conveyance and article of agreement, and were things incident to the building described as a mansion-house, having been specially purchased for, and connected with, the said mansion-house at the time it was constructed by the plaintiff for the purpose of the plaintiff's use and enjoyment of them in the mansion-house while he occupied it. Yet the plaintiff contends that no special agreement having been made with Reider at the time he took the possession and custody of the articles, together with the delivery of the real estate, these articles being mere personal property, did not pass with the real estate. Consequently, the defendant continuing to retain and use them after the plaintiff had given him notice, as averred in the statement, paragraph 11, he, the defendant, was liable to plaintiff in damage.

The basis of the plaintiff's motion for a new trial seems to be his theory that the deeds and written agreement, by which the land and mansion-house (the real estate) left the custody and possession of the plaintiff, was the only evidence the defendant possessed of his ownership of the articles in question, and that those instruments of writing were to be construed by the court as conclusive evidence that the articles claimed by the plaintiff were not conveyed or sold to Reider or to the defendant because the said written instrument did not specifically mention them, and, therefore, it was incumbent on the defendant to prove some specific agreement which would pass the title from the plaintiffs to him before he, the defendant, could have a right to use said articles.

When we review the plaintiff's statement of claim and testimony offered by the plaintiff at the trial, the fallacy of that theory is apparent.

The 10th paragraph of the statement was that "with the knowledge and consent of the said Charles Reider, the articles . . . remained in the said mansion-house, . . . but the said Charles Reider claimed no ownership or control over the same or any part thereof."

This paragraph was expressly denied by the defendant's 10th paragraph of his affidavit of defence, and wherever the plaintiff's statement referred to the articles as not having been conveyed to Reider, such references are denied by the affidavit of defence. (See paragraphs 8 and 9.)

The plaintiff offered the deeds and article of agreement in evidence for the purpose of sustaining the issue on the part of the plaintiff; "for the purpose of showing that the real estate . . . came into the ownership of O. O. Bashline, the defendant; all for the purpose of showing the actual transactions between the time of the ownership of the real estate by Mr. Kopp and its acquisition by Dr. Bashline, the defendant." (See stenographer's notes, pages 10, 11, 12, 20, 21, 25, 26.)

This affirmative position having been denied by the defendant, the burden of proving it was placed upon the plaintiff. It will be observed that Charles Reider was not called to support the allegation made by plaintiff in the 10th paragraph of the statement, and no other evidence was adduced which would directly support it. The evidence of the plaintiff showed that when the mansion-house was constructed, the articles in question were "installed" by him (page 4, &c., of stenographer's transcript) in the mansion-house which "was built for a permanent residence," and he "placed those fixtures into this mansion-house at the time it was first built in 1905 and 1906." They were "selected for use in this particular mansion, with reference to type and design, to correspond with the interior arrangement and color scheme of the

various rooms [in which] they were to be used," and were used by plaintiff and family from 1906 up to the time he conveyed the land to Mr. Reider in 1915. They "constituted a necessary part of the lighting system which he had introduced into that mansion-house, without which the lighting system would have been rendered practically useless." (Stenographer's transcript, page 36.)

The admission [was] made by the plaintiff, on page 28 of stenographer's transcript, "that at the time of the delivery of the deed . . . by Charles Reider to O. O. Bashline, there was no other agreement, except the deed itself, regarding the chandeliers, electroliers and lighting fixtures, the storm door and the range and copper boiler which are the subject of the present controversy." "For the purpose of explaining the *res gestæ*, all the transactions leading up to the alleged conversion" clearly indicate that the case was being tried by plaintiff on the principle of law that has been enunciated as follows: "In case of grantor and grantee, if it be shown that the property is adapted to the use being made of the real estate and is attached thereto, it will be presumed that it was intended to become a part of such real estate; but such presumption may be overcome by showing that the owners of the property treated it as personalty during the time it was being used in connection with real estate:" Snuffer *v.* Spangler, L. R. A., 1918, E, page 149, notes.

The above case from the Supreme Court of West Virginia cites the case of Vail *v.* Weaver, 132 Pa. 363, as illustrative of the rule.

The same rule seems to have controlled the efforts of the defendant in combating the plaintiff's claim for damages, and the judge presiding at the trial was certainly controlled by that principle in his rulings and charge to the jury.

The fourth point submitted by the defendant for the court to charge the jury was as follows: "The criterion by which the jury are to be governed in determining whether the property in suit are permanent fixtures or not is the character of the fixtures for permanency, and the intention of the plaintiff to annex for permanent use at the time said fixtures were first put into the building."

The defendant's fifth point was as follows: "The intention which thus becomes controlling is not the secret design which may have dwelt in the mind of the plaintiff, and of which he alone can speak, but the intention which flows, apparent to all, from the character of the fixtures for permanency, the mode of their annexation, and the clear purpose to be served, the manifest relation which the fixtures bear to the realty, and the visible effect of their severance therefrom."

These two points were affirmed by the court, and the affirmation is part of the fourth reason alleged by the plaintiff as a basis for his motion for a new trial.

In our view of the case, the points were drawn in strict conformity with the law as laid down in Hill *v.* Sewald, 53 Pa. 271; Seeger *v.* Pettit, 77 Pa. 437; Benedict *v.* Marsh, 127 Pa. 309; Wick et al. *v.* Bredin et al., 189 Pa. 83.

The sixth point affirmed for the defendant is covered by the same principle. The plaintiff's fourth reason for a new trial is, therefore, dismissed.

The plaintiff's requests, which were not affirmed by the court, are equivalent to binding instructions for the plaintiff and were properly refused by the trial judge. The facts under all the pleadings and testimony were for the jury.

The plaintiff's third reason for new trial is, therefore, dismissed.

All the other reasons assigned for new trial are too general for any specific answer, and for that reason must be dismissed.

1 D. & C.

Kopp v. Bashline.

It is true that the brief submitted to the court at the argument on the motion for a new trial referred to certain pages of the stenographer's transcript which contained what the defendant claimed were objectionable rulings or evidence, but there are no specific errors pointed out. This mode of practice is very severe on judges who have to review evidence for the purpose of ascertaining the real discontent of the objector. We will, however, in this case, endeavor to answer the uncertain objections as guided by the plaintiff's brief.

The first observation in the brief is as follows: "In all of the proceedings before the court counsel for the defendant has confused the law of 'fixtures,' which is a part of the law of real property, with the law which should govern the case. And . . . in its rulings on the evidence, in its charge to the jury and in its answers to points, the court fell into the same error."

The brief then endeavors to verify these rather uncertain propositions by arguing, first, "that the plaintiff owned the lighting fixtures, storm door, range and copper boiler on and prior to Oct. 25, 1915, and defendant came into possession of these articles, used them and claimed them as his own."

That is a fair and honest synopsis of the facts in the case, as far as it goes, but there were other circumstances in the evidence submitted by both the plaintiff and the defendant which must have impressed the jury.

The second argument in support of the advanced propositions is the following conclusion: "Under these circumstances, the only title to the articles in controversy that could possibly have been obtained by the defendant must have come through the instruments of writing introduced in evidence, namely, the deed of Oct. 25, 1915, from Mr. Kopp to Charles Reider (Exhibit No. 3, pages 12 and 20); the agreement of January, 1918, between Mr. Reider and Dr. Bashline (Exhibit No. 4, pages 21-23), and the deed of April 1, 1918, from Mr. Reider to Dr. Bashline (Exhibit No. 5, pages 26-28)." A study of the transcript of the proceedings at the trial and the pleadings in this case cannot but reveal the sophistry of that reasoning.

In presenting his case to the jury, the plaintiff not only proved the deeds of conveyance which legally carried the real estate from his ownership, title and control into the title and possession of the defendant, but he affirmatively proved that the articles now in question were made fixtures to that real estate at the time he first took possession of it as his domicile or "mansion-house." That said articles had been selected and affixed with the special design of making the surroundings enjoyable in the dwelling, and they were necessary for the proper habitation of the said mansion-house. When the real estate was deeded to Reider, the possession of the whole house, with the equipment it contained, particularly the fixtures in question, was delivered altogether to the custody and control of Reider. In his custody and possession this real estate, including the fixtures, remained unchanged for a period of more than two years, when it was evidently viewed by the defendant with his intention of purchase. At that time the articles evidently were affixed to the premises as they were at the time Reider took possession of the premises by right of title to the real estate. It was not explained to the defendant that any of these fixtures were not intended to be a part of the real estate; it was not to be denied that Reider had retained them just as they were for over two years, and when the defendant bound himself to purchase the real estate in writing at a stipulated price, Reider delivered into his possession without reservation the whole premises, with the fixtures, just as it had been presented to his view as an inducement to purchase. After thus getting into posesssion of the real estate, mansion-house, with its fixtures, and using and enjoying all for his

own purposes, he fulfilled his contract to purchase and received his technically drawn deed for the conveyance of the title thereof. Not until that deed of conveyance had been delivered to defendant, and his payment of the full amount of the consideration had been definitely secured, did the plaintiff ever intimate to the defendant that he claimed the fixtures annexed to the mansion-house which he deeded and conveyed to Reider.

All these circumstances were directly brought out by the evidence, affirmatively submitted to the jury by the plaintiff.

It was evident that the hypothesis upon which the defendant rested his defence is the principle of law announced by the Supreme Court of Pennsylvania, that "as to all articles not so intimately connected with the freehold as to become essentially a part of it, the intention—not the mere physical fact of their connection with the realty—is the criterion of annexation. But the 'intention' which thus becomes controlling is not the secret design which may dwell in a party's mind and as to whose existence he alone can speak, but that 'intention' which was either expressly declared by the parties competent to make it the governing rule, or which flows, patent to all, from the nature and character of the act, the clear purpose to be served, the manifest relation which the articles bear to the realty, and the visible consequences of their severance upon the proper and obvious use of it:" National Bank of Catasauqua *v.* North, 160 Pa. 303.

Upon this principle the trial judge based his rulings in the general admission of evidence, and expressly charged the jury that "the test as marked out by the law is that, in determining whether personal property—and these things are personal property; these things enumerated in the plaintiff's claim are personal property—in determining whether personal property has become a fixture and part of the land, it is not the character of the physical connection with the realty which constitutes the criterion of annexation, but it is the intention to annex and identify the property with the realty."

Again, in the charge the jury was told: "As I said before, you will take all the circumstances of this case, remember them in detail carefully. You will remember the building of the house as detailed to you by the plaintiff himself, the purchase of these things for the use of which damage is claimed by the plaintiff, the placing of them in the house as he described to you, and as has been described to you by other evidence, the character of the articles, their comparison with the surroundings and the premises, the price he paid, the manner in which he turned them over to the purchaser of the real estate, Charles Reider, the manner in which they were turned over by Charles Reider to the present defendant, O. O. Bashline, and see whether the preponderance or weight of the evidence convicts your mind that the intention was to make those articles a part of the realty. But if the weight and preponderance of the evidence does not convict your mind that the intention of the plaintiff, at the time he affixed these articles to the realty, was to make them a part and parcel of the realty, then, of course, your duty would be to render a verdict for the plaintiff."

Under the decisions, we do not think the charge of error made by the plaintiff against the defendant and the trial judge can be justified.

It is true that in a case stated, where, by the facts peculiar to the particular controversy, the former owner of the house, which had been levied upon by the sheriff under an execution and sold, removed such articles as he claimed were personal property belonging to him before he removed from the house, it was decided that "gas fixtures, such as chandeliers and side brackets, put up and attached to the gas-pipes by the owner of the premises, are mere per-

sonal property, not fixtures in the proper sense of the term, and do not pass by a sheriff's sale of the real estate:" Vaughen v. Haldeman, 33 Pa. 522.

And " 'gas fixtures,' as distinguished from 'gas fittings,' are not the subject of a mechanic's lien under the Act of April 14, 1855, P. L. 238," and that "the sale of a house in general terms will not include the gas fixtures in it; to pass them with the house there must be a special agreement:" Jarechi et al. v. Philharmonic Society, 79 Pa. 403.

In that case "the only matter in controversy (was) as to whether the class of materials designated under the general name of gax fixtures, and the labor of putting them in place, can be the subject of a mechanic's lien."

The theory of the defence in the case at bar, and the rulings of the trial judge, were not in conflict with the principles announced by those cases, but were rather in harmony therewith, for the charge of the court expressly notified the jury that the articles in controversy were personal property, and if the proven facts and circumstances did not show that they were annexed to the real estate with the intention of making them part thereof, the verdict should be for the plaintiff. The principles announced in the cases just cited are still followed, as we understand the law, where the facts go no farther than did the facts of those particular cases; but the same rule is adhered to in another announcement of the Supreme Court in a line of cases which seem to state the same principle under different circumstances. In Voorhis v. Freeman, 2 W. & S. 116, Chief Justice Gibson stated that "the criterion of a fixture in a mansion-house or dwelling is actual permanent fastening to the freehold, but this is not the criterion of a fixture in a manufactory or mill."

In Hill v. Sewald, 53 Pa. 271, the Supreme Court said: "It is not the character of the physical connection with the realty which is the criterion of annexation. The intention to annex, whether rightfully or wrongfully, is the legal criterion."

In Seeger v. Pettit, 77 Pa. 437 (which was a controversy between landlord and tenant), the Supreme Court said: "In determining what are removable fixtures, the criterion is the intention to annex, not the character of the physical annexation to the realty."

In considering the appeal, Mr. Justice Paxson, referring to the facts, said: "The matter of fixtures should have been left to the jury as a question of intention. Instead of doing so, the learned judge applied the law to certain facts of the case." For that reason the judgment was reversed.

In Wick v. Bredin et al., 189 Pa. 83, the Supreme Court again announced the principle: "In determining whether personal property has become a fixture and part of the land, it is not the character of the physical connection with the realty which constitutes the criterion of annexation, but it is the intention to annex and identify the property with the realty."

The same doctrine was announced in McClintock & Irvine Co. v. Ætna Explosives Co., 260 Pa. 191, and Exler v. Wickes Brothers, 263 Pa. 150.

As was said by Mr. Justice Mercur, in rendering the opinion of the Supreme Court in the case of Darrah v. Baird, 101 Pa. 265, 273: "Fixtures are not goods and chattels for all purposes. They are not unless made so by the tenant's severance, or for the benefit of his execution creditors. While they remain attached, they are part of the freehold."

As early as 1835 it was ruled that: "Even as between landlord and tenant, fixtures erected by the latter and which he is entitled to remove must be removed during the term; after the expiration of the term, the tenant can neither remove them nor recover their value from the landlord:" White v. Arndt, 1 Wharton, 91.

Kopp v. Bashline.

This doctrine is maintained in this State (Radey v. McCurdy, 209 Pa. 306), and followed in other states: Sanders v. Sutlive Bros., 6 A. L. R. 1503, and notes (g), 1513.

In determining whether or not "fixtures" similar to the articles in question in the case at bar are part of the real estate, the intention of the person putting them in place was to be considered and submitted to the jury: Harmony Building Ass'n v. Berger, 99 Pa. 320; Benedict v. Marsh, 127 Pa. 309; Vail v. Weaver, 132 Pa. 363.

Those authorities, we think, fully sustain the theory upon which the defendant rested his case and the manner in which the controversy was left to the jury.

There is no doubt but that the articles in question might have been properly considered personal property by the original owner, but he did not treat them as such when he turned them over to Reider, or during the term of Reider's dominion over them, or at the time Reider turned them over to the defendant, or during the three months of the defendant's dominion over them under the lease of January, 1918, and the reasonable presumption would be that the fixtures were delivered as a part of the mansion-house, which was a part of the real estate conveyed by deed. Being necessary fixtures, under all the circumstances, his declaration of a secret intention could not avail, but his intention necessarily, under the facts, became a question for the jury to decide.

As we have before said, the damage sued for in this suit was in the nature of a penalty for trover and conversion of the personal property of the plaintiff. The issue made by the pleadings denied that the plaintiff owned the articles which the statement claimed. The proof required from the plaintiff was to show to the satisfaction of the jury that the title to the articles remained in him. He failed to do that, and his technical reasons advanced in support of his motion for a new trial do not seem sufficient to sustain the motion: Darrah v. Baird, 101 Pa. 265; Overton v. Williston, 31 Pa. 155.

Motion and rule for new trial discharged.

From Richard E. Cochran, York, Pa.