## Lemar *against* Miles.

A fixture erected by a tenant on demised premises for the purpose of carrying on his trade, is personal property, and may be removed by him or levied on by *fieri facias* against him, and at his death passes to his executor: and it does not alter the case that by the agreement between the landlord and tenant, the fixture, in a certain event, was to become the property of the landlord, unless that event had actually occurred.

ERROR to *Indiana* county.

This was an action of trover for a steam engine, by William Lemar against John B. Miles, in which these facts appeared:

The plaintiff being the owner of a tract of land with two salt wells upon it, entered into this agreement, dated 30th of June 1828:

"That the said colonel William Lemar hath this day leased and doth by these presents farm let unto the said George W. Johnston and William Barker, their heirs, assigns or representatives, the property hereinafter described, for the full term of eight years from the

date hereof, viz. two salt wells and works on the west end of his place, together with all the tubes, pump machinery, pumps, metal, carts, tolls and weights and balance beams, and all the implements thereto belonging; together with all the land, buildings and appurtenances thereon, which said Lemar owns, situated, &c.; and to have immediate possession.   And for and in consideration of the before mentioned privileges, the said G. W. Johnston and William Barker do agree to bore both those wells to the depth of five hundred feet (if practicable) in a reasonable time, and as much deeper as they please, and to make all additional and necessary erections at their own expense, and to pay to the said colonel William Lemar four hundred and thirty barrels of salt, at the works, to be paid semiannually and according to the provisions hereinafter stated; the rent to commence on the 1st of January 1829.   It is understood that should they not succeed in getting water at the depth of five hundred feet, such as the said Barker and Johnston may deem sufficient to justify the erection of works, that they are to pay no rent; and should they succeed in one well and not in the other, the rent to be in proportion—say two hundred barrels for each well and thirty for the farm.   It is also understood, that should colonel Lemar sell his farm during said lease, said Johnston and Barker are to relinquish all the farm land except ten acres, with the works and buildings, including those William Moore occupies.   They do not release any part of the coal on the farm first mentioned, or timber, so far as may be necessary for the use of said works during the term of eight years. It is understood that should the wells fail at any time during said lease, that said Johnston and Barker are at liberty to give them up by paying up the rent to the time of said failure; and should such failure take place within the term of three years said Johnston and Barker are at liberty to take away all the metal and improvements of the works, or be paid the value thereof, at the choice of the lessor. Should the colonel sell the farm, the rent for the farm to cease (say thirty barrels) when said Johnston and Barker give possession.   And it is fully understood that said Barker and Johnston do not claim, and are entitled to no right in the timber land mentioned in the before described land, further than relates to the coal and timber for the use of the works, which they are to have the full and entire privilege of; and should the colonel want to clear any part of the timber land, he is to have the privilege of doing so.   It is also understood and expressly agreed upon, that said Johnston and Barker are to pay no rent during the time they are boring—after the wells are bored five hundred feet; or, in other words, the rent is to cease during the time they are boring at the last or sixth hundred feet or any part thereof.   For the true performance," &c.

On the 4th of March 1830, the lessees assigned and transferred their term to Jacob Drum, who purchased and erected a steam engine for the purpose of carrying on the works.   It was built into a stone wall, that is the boiler and frame, and the engine attached by

[Lemar v. Miles.]

screws and pipes.    It was levied upon, under a *fieri facias* against Jacob Drum and sold to the defendant ; and the material question was, whether it was the subject of levy and sale as the property of Drum, or whether, under the agreement, the property did not belong to the plaintiff.    The plaintiff asked the court to instruct the jury : " that by the terms of the lease between William Lemar, and G. W. Johnston and William Barker, the engine became a part of the property of William Lemar, inasmuch as the lessees did not give up and relinquish the possession of the well in three years from the 1st of January 1829."    But the court (Young, president) was of opinion that the plaintiff was not entitled to recover, and so instructed the jury, who found a verdict accordingly.

*White,* for plaintiff in error.
*Stannard,* for defendant in error.

The opinion of the Court was delivered by

SERGEANT, J.—The general principle is, that a fixture erected by a tenant on demised premises, for the purpose of carrying on his trade, is personal property, and may be removed or levied on by *fieri facias* against him, and at his death, if not disposed of, passes to his executor.    In Lawton v. Lawton, 3 *Atk.* 13, a fire engine set up for the benefit of a colliery by a tenant for life, was considered part of his personal estate, passing to the executor as assets, and not to the remainder man as annexed to the freehold : it being for the benefit of the public to encourage tenants to do what is advantageous to the estate during their term.    The same point was afterwards decided in Dudley v. Warde, *Amb.* 113, where an engine of a similar kind was considered part of the personal estate, whether erected by tenant for life or in tail.    In Van Ness v. Packard, 2 *Peters's S. C. Rep.* 137, the subject is carefully examined by Justice Story, and the tenant was there held not to be liable for pulling down and removing a wooden dwellinghouse, with a cellar of stone or brick foundation, and a brick chimney, which he had erected on a demised lot of ground for a term of years reserving rent, with a view of carrying on the business of a dairyman and for the residence of his family and servants engaged in the business.    The present is the case of a steam engine set up by the tenant on the demised premises and used in lieu of horse-power, for more advantageously carrying on the manufacture of salt.    It must, therefore, be deemed personal property belonging to him, and as such liable to be seized and sold on the execution of his judgment creditor.    In Gray v. Holdship, 17 *Serg. & Rawle* 413, the copper kettle in the brewhouse was erected by the owner of the inheritance, and would have passed to the purchaser of the building unless specially reserved : it was, therefore, part of the building within the mechanic's lien law.    The case of Morgan v. Arthurs, 3 *Watts* 140, was determined on the same grounds.    But

[Lemar v. Miles.]

here the engine was purchased and erected by the tenant, and was never part of the inheritance.

It is supposed, however, that the terms of this lease form an exception to the general rule.    There is a covenant on the part of the lessees to bore the wells to the depth of five hundred feet if practicable, and as much deeper as they please, and to make all additional and necessary erections at their own expense.    It is afterwards declared, that should the wells fail at any time during the lease, the lessees were at liberty to give them up by paying up the rent to the time of said failure; and should such failure take place within the term of three years, the lessees were at liberty to take away all the metal and improvements of the works, or be paid the value thereof, at the choice of the lessor.    This covenant seems to contain an implication that if the lessees gave up the works after the three years, on account of failure of the water, the erections were to belong to the lessor.    The reason of this covenant is not very clear; but, perhaps, it was thought right they should remain as an indemnity to the lessor for his loss, where the lessees had enjoyed the strength of the wells during, perhaps, a larger part of the term.    But there was no surrender on account of failure; for although one witness for the plaintiffs said he thought the water failed the first year, he explained by saying it got weaker; it was not more than half as good perhaps. He also states that the well was not given up to Lemar.    The event contemplated, then, never occurred; and the rights of the parties can only be adjusted by the application of the usual legal principles. Besides, I am inclined to think this clause refers to erections of a more real and permanent character than an engine.    The words "metal and improvements," may comprehend all permanent fixtures of iron or other metal, and all buildings, whether dwellinghouses, stables, sheds, walls, or of whatever kind, set up for the purpose of carrying on the business more conveniently; the right to remove which might have been considered as questionable, unless expressly agreed to.    But for an article in itself decidedly personal, it was not necessary to make such provision, and it ought not by implication to be applied to it.

Judgment affirmed.