## Diamond v. Butler et al.

Clarence J. O'Donnell and A. R. Cingolani, for plaintiff.

Lee C. McCandless, for defendants.

CAMPBELL, P. J., September 7, 1931.—The plaintiff entered into a bailment contract with Edward B. Butler for the loan or bailment for a stipulated period of one "Steelcote" garage, 10 feet by 18 feet by 8 feet, to be erected on locust posts on land of Butler, for which he agreed to pay the plaintiff $213.75 in equal monthly instalments, evidenced by negotiable notes, with provision that at the end of the bailment period the merchandise would be returned to plaintiff, and with a provision for the purchase of the merchandise either during the bailment or at its expiration upon full payment of the original con-

sideration of $213.75. It contains the following provision: "It is expressly agreed that the right of property of said goods remains in the said The Diamond Hardware Mfg. Co. . . . It is further agreed that the merchandise is not to become a fixture on property where located, nor is to become liable for debts or other obligations." The garage was duly erected on land of Butler and thereon was, on August 14, 1930, replevied by the sheriff in due form for failure to pay rental. Prior to the date of the bailment contract, a mortgage was placed on the land on which the garage was located by Butler's predecessor in title to secure the sum of $2000, evidenced by bonds of the then owner. On June 6, 1930, subsequent to the erection of the garage, the land upon which it was erected was sold by the sheriff on a judgment confessed upon the bonds which accompanied the mortgage and was purchased by the defendant, Ruth P. Bastian, without notice of the plaintiff's claim to the garage. The sheriff's deed was recorded June 12, 1930. On June 9, 1930, an agent of the plaintiff notified James E. Marshall, Esq., a member of the law firm of Marshall & Watson, including Mr. Marshall and Thomas W. Watson, Esq., "of the plaintiff's title and ownership in and to the said garage and made demand for the return of the same." On June 25, 1930, Ruth P. Bastian conveyed said land, with the structures thereon erected, to James E. Marshall and Thomas W. Watson.

We are unable to find any case in this state in which the question here involved has been directly raised. Under the common law, all articles attached to the freehold became a part of the freehold. Under our law, the general rule is that articles attached to the freehold become subject to the lien of an existing mortgage upon the land, and title thereto passes with the land under a sale upon the mortgage. Under the application of these general rules, the title to this garage would be vested in the defendants.

However, there are two general exceptions to these rules, the facts of which must be here examined: The first relating to the exception to the said common-law rule where the intent of the parties who attach the article to the freehold is that it shall not become a fixture on the land; and the second relating to sales under bailment contracts.

1. These exceptions relate generally to questions as between landlord and tenant and with relation to trade fixtures. The rule is that the common-law doctrine of physical annexation as the real test no longer applies and that "unquestionably the intention to annex . . . is the true legal criterion:" Hill v. Sewald, 53 Pa. 271, 273. "The question of fixture or not depends on the nature and character of the act by which the structure is put in place, the policy of the law connected with its purpose, and the intentions of those concerned in the act:" Meigs's Appeal, 62 Pa. 28; Hill v. Sewald, 53 Pa. 271; Wick v. Bredin, 189 Pa. 83. "The modern authorities give preëminence to the intention of the parties, as declared by them, or which flows from the nature and character of the act, the clear purpose to be served, the manifest relation which the article bears to the realty, and the visible consequences upon its severance upon the proper and obvious use of it: Bank v. North, 160 Pa. 303:" Silliman v. Whitmer & Sons, 11 Pa. Superior Ct. 243, 257.

In Bank v. North, supra, where the question was whether certain radiators were fixtures and thus carried by a sheriff's sale on a mortgage, or personal property and carried by a sale on a judgment execution, Judge Endlich, on page 308, states the rule to be that, "as to all articles not so intimately connected with the freehold as to become essentially a part of it, the intention, not the mere physical fact of their connection with the realty, is the criterion of annexation," which intention is not that secret design of the party "but

that 'intention' which was either expressly declared by the parties competent to make it the governing rule or which flows, patent to all, from the nature and character of the act, the clear purpose to be served, the manifest relation which the articles bear to the realty and the visible consequences of their severance upon the proper and obvious use of it. . . . 'It is an intention which settles not merely his own rights, but the rights of others who have or may acquire interests in the property. They cannot know his secret purpose, and their rights depend not upon that, but upon the inferences to be drawn from what is external and visible.'"

So, as between the plaintiff and Butler, the terms of the bailment contract that this garage was not to become a fixture would control. In this case, however, the rights of a mortgagee under a preëxisting mortgage and of a purchaser for value at a sheriff's sale thereon are involved.

Many of these cases deal with the rights of creditors and establish the rule that where the intention in annexing chattels to realty was not to make them a part of the freehold, they do not become subject to the lien of a prior mortgage. In Hill v. Sewald, supra, boilers of a steam mill hired on a monthly rental, on the repurchase of the land on a purchase-money morgtage executed prior to the installation of the boilers, the purchaser having been given notice of the plaintiff's claim to the boilers, were decided not to be included in the lien of the mortgage, they not having been annexed to the freehold. Wickes Bros. v. Island Park Ass'n, 229 Pa. 400, involved engines and fixtures for the generation of electric light and power under a contract retaining title in the vendor until payment. These were installed on land subject to a mortgage to secure bonds, upon the sale of which it was purchased by the receiver for the bondholders, with notice of the vendor's claim. The court states that a purchaser at a receiver's sale, with notice, or a holder of bonds secured by a mortgage given before the machinery was sold, has no higher right than the park association, and the only question for decision was whether or not the machinery became part of the realty. Judgment for vendor of the machinery. Kinnear v. Scenic Rys. Co., 223 Pa. 390, involved the right to a scenic railway installed by the tenant of defendant. The plaintiff was a purchaser of the land under two mortgages, one preceding the erection of the railway and the other following, the purchaser holding the land for the second mortgagee. Held, that the railway was erected as a permanent improvement and judgment was for the plaintiff. Benedict v. Marsh, 127 Pa. 309, involved some machinery connected with a steam sawmill. The plaintiff was the purchaser of the land at sheriff's sale on a judgment entered subsequent to placement of the machinery, and the defendant claimed through a bill of sale from the owner made subsequent to the entry of the judgment. The question involved was whether the machinery was personalty or realty. Verdict for the defendant. It does not appear whether or not plaintiff had notice of the claim before purchase. Vail v. Weaver, 132 Pa. 363, involved machinery of an electric light plant, the plaintiff claiming under a purchase of the machinery upon a judgment execution, the defendant under a prior purchase of the real estate upon sale on a mortgage recorded prior to the erection of the plant. The question was whether the machinery was personalty or realty. Verdict was for plaintiff. Muehling v. Muehling, 181 Pa. 483, involved machinery in a knitting mill, the land being subject to a mortgage upon which the personalty was sold with notice of the mortgagee's claim, it being held that the machinery was part of the realty and was within the lien of the mortgage. In all these cases the particular question submitted was whether the chattels were intended by the

owners to become a component part of the mill or factory, the intent of the owner being the main inquiry in determining that fact.

2. A bailment is a delivery of goods in trust on a contract that the trust shall be faithfully executed by the bailee and the goods returned to the bailor at the expiration of the term: Krause v. Com., 93 Pa. 418; Gibson v. B. L. E. R. R. Co., 226 Pa. 198. It relates to personal property: Nicolette Lumber Co. v. Peoples Coal Co., 26 Pa. Superior Ct. 575, 577; or a chattel: Duhrkop Oven Co. v. Tormay (C. C. A., 3rd), 9 F. (2d) 281, 282. And where a leased chattel is sold at sheriff's sale, the purchaser takes only the interest of the bailee: Groves v. Lewis, 53 Pa. Superior Ct. 511. Such goods are not within the lien of a former mortgage covering land upon which placed: Vail v. Weaver, supra (dynamo, etc., of electric plant); B. M. Root Co. v. Sharpe, 40 Lanc. L. Rev. 297 ("hand jointer" in manufacturing plant); Smyser v. York Furniture Mfg. Co., 42 York Leg. R. 101 (sawing machine); New Chester Water Co. v. Holly Mfg. Co., 53 Fed. 19, and 48 Fed. 879 (pumping engine of a water company). We conclude that title to this garage would be in the bailor in an action against the bailee or against the holder of the preëxisting mortgage.

3. Assuming for the present that the purchaser at the sheriff's sale on the bonds accompanying this preëxisting mortgage had no notice of the plaintiff's claim (which subject will be discussed later), is she bound by (a) the intent of the plaintiff and Butler that this garage should not become a part of the freehold, an intent that is secret so far as the public is concerned; or (b) by the intent of the bailment contract?

(a) First, the exception to the common-law rule with relation to fixtures annexed to the land originated with reference to questions between landlord and tenant and questions referring to trade fixtures, and the garage here involved belongs to neither class, it being erected upon a residence property. The rule with reference to landlord and tenant is based upon the theory that the tenant should have the right to erect fixtures, even to the extent of buildings, in connection with the trade or business of his occupancy, which he should have a right to remove during his term, if it may be done without injury to the freehold. And it early appeared that it was necessary for the protection of manufacturing that some other rule than that of mere attachment should govern in determining whether or not machinery and engines brought into such a plant should become a part of the manufacturing institution, and so the rule of the intent of the manufacturer was adopted, as appears in cases cited in Hill v. Sewald, supra. This doctrine has been extended and applied in the solution of various situations arising in such cases, and the law is well established that when one deals with an article attached directly or indirectly to land, whether an engine or a building, in connection with trade or business, the mere appearance of its attachment to the soil is not conclusive that it has become a part of the freehold, but investigation and inquiry must be made in order to determine the real facts. Such has not been the case with reference to an ordinary residence property, and the general practice has been that where a building is located upon the soil, irrespective of the type of foundation, whether on stone or posts, it belongs to the soil. Reference to the characteristics is necessary in determining the question whether or not it is a fixture, as cited under Part 1, supra, in that the nature and character of the act by which it is put in place, the purpose to be served and the manifest relation which the article bears to the realty are involved, and the quoted extracts from Bank v. North, supra, are referred to. All of the characteristics of the erection of this structure, aside from the provisions of the contract, lead to the conclusion that this garage was made a

part of the freehold. The intention there held by the vendor and vendee of the garage was, so far as an innocent purchaser was concerned, the contrary to what the facts of the construction indicated. In Benedict v. Marsh, supra, on page 314, the Supreme Court says, quoting Harmony Bldg. Ass'n v. Berger, 99 Pa. 320: "There may be some things which are so essentially a part of the freehold that, as between vendor and vendee, the intention of the owner may be of little weight. But this is not such a case. The articles themselves were of such an equivocal character as to raise a jury question." The Harmony Building Association case referred to a heater and weather vane, and the Benedict case referred to an engine, boiler and machinery in a sawmill. We, therefore, conclude that as to third parties without notice of plaintiff's claim, this garage became a fixture upon the real estate.

(b) Bailment contracts of personal property are valid although the possession be in one other than the owner, such as contracts of lending and hiring, "without which society could not well exist" and in which the artisan or manufacturer has possession of materials belonging to another where "no suspicion of fraud can fairly arise, where the transaction is in the usual course of business. But the case is very different where it is intended that the property should be apparently in one, while it is in fact in another. This is out of the usual course of business, unnecessary, and directly tending to the injury of those who are not in the secret:" Martin v. Mathiot, 14 S. & R. 214. "It would disturb, if not destroy, the most useful kind of domestic trade if the manufactured article [rags delivered to the manufacturer to make into paper] was subject in such cases to the debts of the artisan. The process does not enable him to cheat creditors, because, the course of trade being known, it is the duty of the creditor to inquire:" King v. Humphreys, 10 Pa. 217. It cannot be said that society could not well exist without the lending or hiring of buildings to be placed upon land, nor that such action is in "the usual course of business,"nor that such a course of trade is well known and involves the duty upon the creditor to inquire. In the case of Root Co. v. Sharpe, supra, where title to a "hand jointer" was held not to pass under a sheriff's sale, the court states that it was a machine used in the manufacturing business, and, therefore, was not such a fixture as became part of the real estate when it was attached to it. In Holly Mfg. Co. v. New Chester Water Co., 48 Fed. 879, dealing with the bailment of a pumping engine, it is pointed out that an exception to the general rule exists with reference to rails or bridges becoming part of a railroad because they become an actual part of the permanent structure, citing Porter v. Steel Co., 122 U. S. 267. The case also comments on the fact that no rights of third persons had intervened. In Keeler Co. v. Shee and Beatty, 9 Del. Co. R. 329, a rule for judgment for want of a sufficient affidavit of defense was discharged, the affidavit setting forth that the boilers, engines, etc., in dispute were in the possession of the brick company to which they were bailed by the plaintiff, and had been attached to the freehold belonging to Shee; that they remained after the expiration of the lease, and, while so attached, Beatty had purchased them without notice, and that plaintiff knew of the attachment and the end of the lease. The court, after admitting the rule that the vendee of personal property takes only such title as the vendor has, states that when the "owner clothes the person assuming to dispose of the property with the apparent title or authority to dispose of it, and one purchases upon the faith of such apparent ownership or authority and will be the loser if the appearances to which he trusted are not real, a different question arises, and it comes within the rule—that where one of two innocent persons must lose—the loss should fall on him whose act contributed to

and brought about the mistake." In Marx et al. v. Perrus et al., 10 D. & C. 175, involving a bailment lease of a heater, bathtub, sink, etc., the action was between the vendor and the landlord and tenant as defendants and arose over a proceeding on the pleadings. The court was of the opinion that if the chattels were not a constituent part of the realty and might be removed without material damage to it, other than the loss of the chattels, or if they were trade fixtures, the plaintiff might be entitled to recover possession, and, therefore, judgment for want of a sufficient affidavit of defense was refused in order that relevant matters not included in the pleadings might be shown. In Leitch v. Sanford Motor Truck Co., 279 Pa. 160, dealing with a bailment of a motor truck, the seventh syllabus reads: "If the owner, for his own advantage, permits the bailee to so act with the property (other than having possession), or so clothes him with apparent ownership, as to mislead or deceive the public, an estoppel may arise against the owner, but such conduct must affirmatively appear from the evidence." We are of the opinion that in this case the bailor, having knowledge that the bailed garage was to be erected upon the land of bailee in connection with his dwelling house, carrying to the public every indication of a fixture erected upon the freehold, was bound, in order to retain title as against a purchaser without notice, to give some definite notice of its claim before such purchase.

(a) and (b) While the general rule is that at a sheriff's sale nothing passes but the interest of the defendant, and that the rule of caveat emptor applies, yet a sheriff's vendee is a purchaser for value within the recording acts, unaffected by any secret or unrecorded transfer of which he had neither actual nor constructive notice: 19 P. & L. Dig. Dec., c. 34178; and a bona fide purchaser of land for a valuable consideration is not affected by any latent equity or trust of which he has not actual notice or constructive notice from the record which lies in the line of, or is necessary in the deduction of, his title or from circumstances sufficient to put him on an inquiry which would lead to the requisite knowledge (id., c. 32656).

In an annotation in 13 A. L. R. 448, the author states that with but few exceptions it seems to be uniformly held that the rights of the purchaser of the realty, without notice of the claim of the seller of fixtures, are unaffected by the latter's retention of title thereto or reservation of the right to retake them upon default in payment of the purchase price. Most of these cases involve the erection of some type of machinery upon the land under an agreement termed a conditional sale agreement, which evidently, in those states, as to mere chattels, would be effective as retaining title in the vendor, and in none of them did the purchaser have notice of the conditional sale agreement, and in no case was the purchaser one under a judicial sale. In many of the cases it is admitted that the vendor under the contract could reclaim the property even from a purchaser in good faith without notice, but when it was attached to the real estate so as to make it a part thereof or so as to change its distinctive character as a chattel, that purpose to retain its character as a chattel is not effective as to purchasers without notice: Wentworth v. Woods Machine Co., 163 Mass. 28, 39 N. E. 414; Simpson Brick-Press Co. v. Wormley, 166 Ill. 383, 46 N. E. 976. Where the vendor agrees that the outward appearance of the chattel be changed into real property, he assumes the risk of it being sold as such: Knowlton v. Johnson, 37 Mich. 47; first, because where one of two innocent persons must suffer, that one should bear the loss whose conduct or act placed it in the power of a third party to impose upon or deceive another, and, second, because of the policy of the law in respect to real estate titles, which is opposed to secret liens and

requires that the public records shall contain evidence of all liens and encumbrances. The general rule that everything attached to the freehold becomes land is relaxed as between landlord and tenant in favor of the latter, and as to machinery introduced for manufacturing purposes, also between the tenant for life and the remainderman, but is administered strictly between the owner of the land and a trespasser making erections thereon, and between vendor and vendee in favor of the latter: Union Bank v. Wolf Co., 114 Tenn. 255, 4 A. & E. Ann. Cas. 1070. In Simpson Brick-Press Co. v. Wormley, supra, relating to a brick-press, it was held that it was a part of the real estate, and the conditional sale agreement that its character should be different from what it appeared to be did not change such character as to third parties without notice, and it was held that defendant was a bona fide purchaser without notice of the secret lien. Washburn v. Inter-Mountain Mining Co., 56 Ore. 578, 109 Pac. 382, was an action to foreclose miners' liens, one of the defendants claiming a quartz mill as personal property under a conditional sale agreement. The court takes the position that when the mill is affixed to the soil the situation is changed as to the rights of third parties without notice, and that as to such a person dealing with reference to the realty, the mill will be treated as a fixture for the reason that to hold otherwise would render uncertain land titles and endanger the rights of purchasers and afford opportunities for fraud, and this notwithstanding the argument that the vendee of the chattel could invest the plaintiff with no better title than he himself had. The case cites Muir v. Jones, 23 Ore. 332, 31 Pac. 646, in which it is stated that while by agreement barns or other structures so attached to the soil as to become part of the realty may be made to remain personal property, yet the general course of decisions is that a purchaser of land on which such fixtures are located must have notice of such agreement or he will be entitled to hold them as part of the realty; that while a conditional sale of a chattel is valid against third parties, that rule relates to parties dealing with the property as a chattel and does not apply to third parties without notice, where the character of the property has been changed to realty by being affixed to the soil. In Prince v. Case, 10 Conn. 375, 27 Amer. Dec. 675, the reason for the rule protecting an innocent purchaser is thus stated: "The policy of our law is that titles to real estate shall appear upon record, so that all may, in this way, be informed where the legal estate is. But were this new mode of conveyance to prevail, encumbrances might frequently be found to exist against which no vigilance could guard, no diligence protect. Our records would be fallacious guides, and when we had gained all the information they could give, we should remain in doubt as to the title. It is much better to leave those who had ventured to rely upon the word or honor of another to resort to that word or honor for their redress than to suffer a person who had resorted to the official register to be defeated by secret claims of this kind. The law cannot prefer the claims of those who take no care of themselves to those who have faithfully used all legal diligence. If a loss is to be sustained, it is more reasonable that he who has neglected the means the law put into his power should suffer rather than he who has used those means." In 58 A. L. R. 1352, it is stated that "it has been held by the great weight of authority that a subsequent purchaser or mortgagee of land without notice of an agreement with the owner that an annexation thereto shall not become a fixture is not bound thereby, being entitled to the thing annexed as apparently forming a part of the land." Many of these cases seem to refer to a parol agreement which may or may not constitute a retention of title in the vendor. A few of the cases may be noticed. Stillman v. Flenniken, 58 Ia. 450, 10 N. W. 842, seems to

relate to a bailment contract in which the rule is applied. Rowand v. Anderson, 33 Kan. 264, 6 Pac. 255, related to a fence erected under agreement that it might be removed at the will of the builder, in which the arguments used seem to apply to the facts of the instant case. In Inhabitants of Andover v. McAllister, 119 Me. 153, 109 Atl. 750, the question arose with reference to a bell belonging to the town, which had been erected in a church steeple, the town being estopped to set up its title against the purchaser of the church building. The court cites the general rule as to unauthorized sales of bailed articles, that the purchaser acquires no title, and adds: "The bailor may be estopped from setting up his title against a bona fide purchaser from his bailee, if, by his voluntary act, he has conferred upon his bailee an apparent right of property other than would ordinarily follow from mere possession:" It cites cases from Colorado, New Jersey and New York; and holds that the bell in this case was, with knowledge of the bailor, permitted to remain in the church under conditions that would naturally mislead a purchaser without notice, and that, therefore, the bailor was estopped from setting up his title against such innocent purchaser. In St. Louis, etc., Ry. Co. v. Beadle, 6 Kan. App. 922, 50 Pac. 988, the court, on page 990 (6), states the law to be: "The purchaser at a judicial or sheriff's sale takes only such title in the property purchased as the execution debtor had therein, and the purchaser obtains only such interest as the execution debtor had; but a purchaser at such sale for a valuable consideration, in good faith, would not be chargeable with some secret unrecorded interest of a third party, unless there was something to reasonably excite inquiry or put such purchaser on notice thereof." James Leo Co. v. Jersey City Bill Posting Co., 78 N. J. L. 150, 73 Atl. 1046, relating to a fence built under a removal agreement, contains a good statement of the law with many authorities. Attention is called to Powers v. Dennison, 30 Vt. 752, page 1355 of said annotation. In 24 R. C. L. 474, the rule is stated with reference to conditional sale of chattels with reservation of title in the seller: "On the same principle, it is held that where the sale is with the intention that the property shall be annexed to or incorporated in the real estate of the buyer, a bona fide purchaser of the realty from the buyer will take it free from any right on the part of the seller to sever and retake possession of the property, the annexation being such as to render the chattel an irremovable fixture as between grantor and grantee, though as between the seller and the buyer it retained its character as personalty and could have been retaken by the seller under his reservation of title." "It has been held that frame buildings resting on blocks or stones, or partly on the ground and partly on posts or blocks, are fixtures as between a mortgagor and mortgagee or a grantor and grantee:" 11 R. C. L. 1082. A provision in a contract for the erection of a garage that title should not pass until a mortgage given was released was not binding on the prior mortgagee where its consent thereto was not obtained: Bankers, etc., Co. v. Harlem Park B. & L. Ass'n, 160 Md. 230, 153 Atl. 64.

4. Ruth P. Bastian, the purchaser at the sheriff's sale, had no knowledge with reference to this garage except what appeared upon inspection — a "Steelcote" garage of substantial type erected upon eight locust posts five inches in diameter, with a graded approach. On the garage there were five metal labels including the words "Diamond Garage, 224 Fourth Avenue, Pittsburgh, Pa.," each of these labels being about five inches by six inches. We do not believe that the appearance of the garage and its construction and method of erection would carry any notice to a purchaser of the land that it was not a permanent structure. Frequently buildings carry the name of the maker or erector, most machinery has inserted some place the name of the

maker, placed there for advertising purposes, so that the mere fact of seeing the name and address of the plaintiff on this garage, we think, does not carry sufficient notice to a purchaser to require inquiry as to the ownership. While it is unnecessary for the bailor to mark goods in order to establish his bailment: Miller Piano Co. v. Parker, 155 Pa. 208; yet the efficacy of a bailment contract to protect the bailor's interest is that there be "no concealment as to creditors of its true nature:" Keystone Watch Case Co. v. Bank, 194 Pa. 535; and "the marking of property with the name of the owner stating him to be the owner, though not under all circumstances indispensable to satisfy the rule just stated, is, nevertheless, significant evidence of an effort at, and effective mode of, compliance with it. See Amer. Car Co. v. Railroad Co., 218 Pa. 519, 521:" Orenstein-Arthur Koppel Co. v. Slipp, 5 Berks Co. L. J. 52. In this case, the contract provided that the property was to be marked with the name of the bailor and the word "owner." It was marked with the name and address of the bailor, which the court (Endlich, P. J.) held did not convey the contemplated unequivocal notice of ownership to someone other than the bailee, and that such action constituted a concealment. If this plaintiff contemplated that notice should be given to the public of his property claim, then that notice should have contained a statement to the effect that plaintiff was the owner. In Wendel v. Smith, 291 Pa. 247, where a card was attached to an automobile, stating that it was the property of another than the one in whose possession it was found, it was held that the card did not constitute sufficient notice of a change of ownership. In the instant case the owner of the real estate, prior to the sheriff's sale, was not within the county, and there is no evidence that anyone was located upon the premises who knew the facts of the garage installation.

It appears that Marshall and Watson, the present holders of the legal title to this land, appeared as attorneys at the sheriff's sale and that they were given notice of the bailor's claim three days after the sheriff's sale, and that they subsequently took title to the land from the sheriff's sale purchaser. A bona fide purchaser for value, without notice of circumstances alleged against the validity of the title, will hold it discharged from the equities between the grantor and another entitled to set up such circumstances, and a subsequent purchaser with notice can protect himself by the equity of a former purchaser without notice: Filby v. Miller, 25 Pa. 264; Heimbach's Appeal, 19 W. N. C. 69; Logan v. Eva, 144 Pa. 312. The rule that if a first purchaser had no notice, a second purchaser from him holds the land discharged of a trust, even though the second purchaser had notice, applies to a purchaser at a sheriff's sale under a mortgage: Dunning v. Reese, 4 Kulp 168. See, also, Duplex Printing Press Co. v. Clipper Publishing Co., 213 Pa. 207, 211. We, therefore, conclude that the present owners of the title to the land upon which this garage was located are holders without any actual or constructive notice of the plaintiff's claim.

5. It appears that about a year prior to the sale of this land the plaintiff confessed judgment on its bailment lease, upon which no further action was taken. We are of the opinion that this did not estop it in any way from exercise of what rights it had under its bailment contract. See Christian v. Dripps, 28 Pa. 271, 277, 278; Jacob Bros. v. Walsh, 43 Pa. C. C. 602.

### Conclusions of law

1. The "Steelcote" garage having been erected upon the residence property of the bailee by agreement of the bailor as expressed in the bailment contract, whereby, so far as it affected Ruth P. Bastian, an innocent purchaser at the

sheriff's sale upon said mortgage, it became a permanent fixture upon the land, as between her and the bailor, the terms of the bailment contract were ineffective.

2. The intent of the bailor and the bailee of said garage was that it should not become a part of the freehold of bailee; nevertheless its erection as a building upon the residence property of the bailee constituted it a part of the freehold as to said Ruth P. Bastian.

3. The said Ruth P. Bastian, purchaser of said garage at sheriff's sale, had no notice of the bailment contract under which it had been sold by the plaintiff to the defendant, Edward B. Butler, nor of the agreement between the vendor and vendee that the same should not become a part of the freehold upon which it was erected.

4. Although the defendants, James E. Marshall and Thomas W. Watson, acquired notice of the bailment contract between the time of the purchase of the garage by Ruth P. Bastian and their purchase of it from her, their title thereto depends upon the validity of the title of Ruth P. Bastian and is, therefore, valid.

5. The garage having vested in Ruth P. Bastian as a freehold of the residence property upon which it was erected is not the subject of an action in replevin: Roberts v. Dauphin Deposite Bank, 19 Pa. 71.

6. Absolute title to said "Steelcote" garage is now vested in James E. Marshall and Thomas W. Watson.

7. Judgment on this proceeding is, therefore, to be entered in favor of James E. Marshall and Thomas W. Watson and against the plaintiff, James H. Diamond, trading and doing business as The Diamond Hardware Manufacturing Company.

### Order of court

Now, September 7, 1931, the prothonotary is hereby ordered to file the findings of fact, discussion and conclusions of law and give notice thereof forthwith to the parties or their attorneys, and if no exceptions thereto are filed within thirty days after service of such notice, he shall enter judgment on this proceeding in favor of James E. Marshall and Thomas W. Watson and against the plaintiff, James H. Diamond, trading and doing business as The Diamond Hardware Manufacturing Company.

From Thomas H. Greer, Butler, Pa.