**Mason Appeal**

*Holt, West & Holt,* for appellant.

SOHN, J., March 2, 1950.—Harry B. Mason appealed from an assessment of property situate in Industry Township in this county. The facts are not in dispute. The assessment is: "Lots Nos. 9, 10, 11 and 12 Spencer Pl. $400.00, 4 trailers at $250.00, $100.00, $180.00, $300.00—$830.00." Harry B. Mason is the owner of the land and no complaint is made relative to the assessment of it. He contends that the assessment to him of the trailers is not authorized by law. The

2

assessment makes out a prima facie case showing the validity thereof. The burden rests on appellant to show by the weight of the credible evidence the invalidity of the assessment: John Wanamaker, Philadelphia Appeal, 360 Pa. 638.

Harry B. Mason operates a trailer camp on the lots assessed in his name. He owns no trailers. House trailers owned by others are, from time to time, on his property. Some remain two days, some two weeks, and three have been on the property one year. During the last year, between 50 and 60 trailers have been on his land for varying periods of time. In August 1949 the assessor went on Mason's land and assessed in his name four house trailers then on the property. One trailer was removed by the owner the same day the assessment was made. Three of the trailers still remain on the property. They are occupied by the owners and used for living accommodations. The wheels and tires are on the trailers. Blocks have been placed under the front of each trailer where, in use on the highway, it would be attached or hitched to a vehicle. Blocks have been placed under the axle in order to take some weight off the tires and make the trailer stable and keep it from moving. Water is supplied to each trailer by use of a hose or copper pipe attached to a water line supplied by Mason. Each trailer stands over a dry well, previously constructed by Mason, for sewage disposal. Electricity is furnished each trailer by attaching a cord provided by the owner of the trailer to an electric line installed by Mason. Each trailer bears Pennsylvania registration plates required by The Vehicle Code of May 1, 1929, P. L. 905, sec. 401, as amended, 75 PS §91, which requires that such plates be attached to the trailer when it is in use on the highway. The School District of Industry Township, by resolution requires Mason to collect from the owner

and pay to it the sum of $25 yearly for each trailer on the property.

The Fourth to Eighth Class County Assessment Law of May 21, 1943, P. L. 571, sec. 201, 72 PS §5453-201, provides in part:

"The following subjects and property shall as hereinafter provided be valued and assessed and subject to taxation for all county, borough, town, township, school (except in cities), poor and county institution district purposes, at the annual rate,

"(a) All real estate, to-wit: Houses, buildings, lands, lots of ground and ground rents, mills and manufactories of all kinds, and all other real estate not exempt by law from taxation."

Unless the requisite authority to support the assessment appears, the appeal must be sustained. The provisions of a law imposing taxes shall be strictly construed: Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 58, 46 PS §558(3); Appeal of Pittsburgh Terminal Coal Co., 359 Pa. 636. It is evident that unless the house trailers, under the situation in the instant case are "real estate, houses or other real estate not exempt by law", the assessment cannot be sustained.

Respondent relies on the opinion by Judge Arnold in Lower Merion Township v. Gallup, 158 Pa. Superior Ct. 572, where he said:

"In 1940 the township amended its building code by adding section 200, reading: 'House trailer means any vehicle for living or sleeping purposes. If a house trailer is used for living or sleeping purposes within the Township for an aggregate of more than thirty days in any period of one year, it shall be considered as a single-family dwelling for all purposes of this ordinance.'

"Admittedly defendant, subsequent to 1940, permitted house trailers to be placed on his ground and

to be used and occupied as dwellings, and the identical trailers have remained there and been used as dwellings for several years without interruption. Admittedly they do not conform to the requirements of the building code in a great number of respects, including sanitation and windows. This subjected him to the penalty imposed and from which he appealed.

"A house trailer is simply a mobile house. It is as much a dwelling as any house which is built on a foundation and therefore not mobile. Indeed these house trailers were not resting on wheels but were 'up on boxes, or some jacks of some sort.' Some 'from the floor of the trailer to the ground (were) covered around . . . with what appeared . . . to be a shingle, or composition . . . for breaking the wind.' Sidewalks leading to each were constructed. Each was connected with water and electric lines. Communal lavatory and laundry facilities were provided by the defendant.

"To say that these were not dwelling houses is an attempt to fictionalize a reality. They were used and intended to be used as homes, and were as much dwellings as any similarly sized structures could be. In fact they contained household conveniences rarely present in houses so small. They differed from the ordinary house only in respect to the ease with which they could be moved. They were very similar to the tourist cabins so frequently found along our highways."

This opinion does not rule the instant case for two reasons: First, the Superior Court was passing on the validity of a building code ordinance and the fact situation as related to the ordinance; not on the validity of an assessment. Second, the facts are different in that the ordinance defined a house trailer as one used for living or sleeping purposes for an aggregate of more than 30 days in any period of one year. The identical trailers remained at the same location for several years without interruption. Sidewalks were constructed to

each trailer and some, from the floor to the ground, were covered with shingle or composition for breaking the wind.

Appellant relies on the Kentucky decision in Foos v. Engle, 295 Ky. 114, 174 S. W. (2d) 5, where a contrary conclusion was reached. This case involved the construction of a building restriction and is not a precedent to be followed in the instant case.

In Kelly et al. v. City of San Diego et al., 63 Cal. App. (2d) 638, 147 Pac. (2d) 127, the District Court of Appeal of the Fourth District of California held:

"It is also argued by defendants that a logical and lawful distinction which furnishes the basis of just classification is to be found in the method of taxation of the trailers and of permanent structures. Trailers are not the subject of general taxation. (Stats. 1935, p. 1312, as amended; §10751, Revenue and Taxation Code.) Owners are charged a fee, which is not a tax as usually understood, but is a charge imposed upon them for the privilege of using the highways of the State. (*Ingels v. Riley*, 5 Cal. 2d 154, 53 P. 2d 939, 103 A. L. R. 1.) It is levied at the rate of 1¾ per cent of the actual market value of the vehicle. (Sec. 10752 Revenue and Taxation Code.) Forty per cent of this revenue is paid to the cities and counties of the State in proportion to their populations, the money to be expended 'for law enforcement, for the regulation and control and fire protection of highway traffic, and for any other state purpose.' (Sec. 11005, Revenue and Taxation Code.) Thus automobile trailers are exempt from general taxation while permanent structures are not."

The decision in this case is based on the interpretation of a California statute.

Two decisions in Pennsylvania common pleas courts recognize, but do not decide the problem now before

the court. In Commonwealth v. Bechtel, 5 Beaver 3, Judge Wilson, of this court, said:

"And our system of assessment of land values for tax purposes is a measure of the worth of the privilege, or a capitalization of its rental value. Therefore, if a vacant lot is a 'trailer camp', its income potential may be the basis of assessment. The 'trailer camp' may be a transitory and changing use of property. As to how, when and under what condition of use assessment can be made we are not prepared to say. We recognize the difficulty. But we cannot alter the law that all real estate in a municipality must be taxed alike. Therefore the ordinance as a tax measure cannot be upheld."

In Crawford v. Wesleyville, 68 D. & C. 215, Judge Laub of Erie County said:

"There is nothing improper about the requirement of a license fee in these cases unless it is manifestly disproportionate to the services rendered. If such disproportion does appear, then the 'fee' loses its identity and becomes a tax, an anomaly to a police measure. The presence of trailers upon the land of the taxable in this instance has had no effect upon the assessment of the property for tax purposes, and indeed, because of the itinerant character of the trailers, we can see some legal and practical difficulties which would arise should such an assessment be attempted."

Because of the shortage of adequate housing facilities during World War II, new workers in many communities used automobile trailers as a permanent place of abode. There are an increasing number of people who, when traveling from place to place, on vacations, on hunting and fishing trips, and for many other purposes, use house trailers. It is to accommodate all owners of trailers that petitioner provided the facilities for their convenience on his land. His motive is, of course, to secure a profit from the use of the land. It

is self-evident that house trailers in a community add new burdens to municipal and school facilities and services. A proper share of the cost thereof should be borne by those who receive the benefit thereof. Municipalities and school districts have solved this problem in many instances by imposing a license fee on the owner or occupant of the trailer. In the instant case the School District of Industry Township passed a resolution imposing such a fee. Generally such ordinances and resolutions have been sustained by the courts.

The specific problem presented in the instant case is: Are house trailers which bear vehicle registration plates, and which are located on land of another person, but not permanently affixed thereto, "real estate, to wit, houses, buildings, lands" or "other real estate not exempt by law from taxation?" We conclude, under the law of real property of this Commonwealth, that the question must be answered in the negative. It is argued that house trailers, being movable, present a problem in the collection of taxes unless the real estate upon which they stand is made liable for the tax. In County Commissioners v. English, 182 Md. 514, 35 Atl. (2d) 135, the Maryland Court of Appeals held that this fact did not justify an arbitrary classification upon all occupants of structures not connected with the land. That house trailers are generally considered personal property must be conceded. The Vehicle Code requires the owners to secure a certificate of title and registration plates to be attached to the vehicle when on the highway. Provision is made in the Act of June 27, 1939, P. L. 1135, sec. 1, as amended, 75 PS §33, for placing encumbrances on trailers in the methods ordinarily used in dealing with personalty. For the purposes of levy and execution, house trailers are treated as personalty, as indeed they are. It follows therefore, that they remain personal property unless the owner, by permanent use or attachment to the land,

does some act which justifies the conclusion that he intended they should be considered realty. A house on the land of another may be real estate for assessment purposes: County of Franklin v. McClean, 93 Pa. Superior Court 165. It was so held in deciding that such house may be assessed in the name of the owner of the house—not in the name of the owner of the land.

The rules of law to be considered in determining whether or not personal property should be considered as part of the realty have been stated in many cases. In Hill v. Sewald, 53 Pa. 271, Mr. Justice Agnew said:

"It is not the character of the physical connection with the realty which constitutes the criterion of annexation, as the authorities hereafter cited abundantly show; but I may now observe that the brick structure upon which boilers are placed is essential for their use. The fire cannot be applied to the boiler to make steam unless it be built into a structure to prevent the escape of the heat. When these boilers and their connections were built into the mill of Snodgrass, it is clear it was with no intention on his part, or those who acted for him, to affix it to the realty as his property, or with an intention to make it his own by a wrongful conversion. They were placed there as the personal chattels of Hill under a valid contract of hiring for their temporary use, the right of removal being expressly reserved. How then can it be said that a chattel is converted into realty when it was neither the intention of the owner of the chattel nor that of the owner of the freehold to annex it? If it be considered as annexed, it must be purely on account of its physical attachment or because the mortgagee had acquired a lien upon it. The latter was not the fact, and the former we shall show is not the criterion of the law. Unquestionably the intention to annex, whether rightfully or wrongfully, is the true legal criterion. It is on this principle that when one fixes his own chattel on the land of another, it is in

legal effect a gift of it to the owner of the land. So where the owner of the land wrongfully fixes the chattels of another (as materials in a building), it is a conversion of them into the realty, and by the change of their nature leaves the remedy of the owner only in damages: Gibbons on Fixtures, 13 Law Lib. 2, p. 4. The same want of intention to convert is imputed to a tenant, who attaches to the land fixtures for the use of his business, the law presuming in favor of trade that he meant to remove them before the end of his term; and it is only on leaving without removal, the intention to make a gift of them to the landlord is imputed to him: *Leman v. Miles*, 4 Watts 330; *Vanness v. Packard*, 2 Wheat. 137. For the same reason even the owner of the freehold may place fixtures on his land which will pass to his executor, and not to the heir or remainderman: Gibbon on Fixtures, 13 Law Lib. 3, 4, pp. 10, 11, 12; *Lawton v. Lawton*, 3 Atk. M. Rep. 14, and note (1), p. 16, Am. ed.

"The old common-law criterion of physical attachment was exploded in this state by Gibson, C. J. in *Voorhees v. Freeman*, 2 W. & S. 116, overruling the unreported case of *Chaffee v. Stewart*, which ruined Chaffee by permitting his cotton-mill to be stripped of its machinery. *Voorhees v. Freeman*, followed by *Pyle v. Pennock*, 2 W. & S. 390, held that a whole set of iron rolls, some of which only could be in place at one time, and the loose iron plates covering the floor of a rolling-mill, were parts of the freehold. So, on the other hand, a boiler built into a stone wall and the engine attached thereto by screws and pipes, were held in *Leman v. Miles*, 4 Watts 330, not to prevent a tenant from removing them, and it made no difference that by agreement they were to become the property of the landlord in a certain event, that event not having happened.

"In *Van Ness v. Packard*, 2 Wheat. 146, Judge Story says that the question whether fixtures erected for the

purposes of trade are or are not removable, does not depend on the form or size of the building to be removed, whether it has a brick foundation or not, or is one or two stories high, or has a brick or other chimney. The sole question (he says) is whether it is designed for the purposes of trade. So, in *White's Appeal*, 10 Barr 252, in which an engine-house, built of stone and wood with a stone foundation for a steam-engine, was held to be personalty. Judge Rogers says, the building being attached to the freehold makes no difference. The same doctrine is held in *Shell v. Haywood & Snyder*, 4 Harris 530. For whether, says Judge Chambers, attached to the realty or not, or in whatever manner attached, is immaterial where the parties agree to consider it personal property. For this he cites *Piper v. Martin*, 8 Barr 211; *Mitchell v. Freedly*, 10 Id. 198, and *White's Appeal*, Id. 254. Beside these cases, which fully sustain the doctrine stated by Judge Chambers, the still later cases of *Harlan v. Harlan*, 8 Harris 303, *Coleman v. Lewis*, 3 Casey 291, not cited either in the court below or here, are more to the point. *Harlan v. Harlan* is a second report of the same case in 3 Harris 507. It was held that the machinery in a cotton-mill, though realty, may be converted into personalty by a mere agreement against a purchaser at sheriff's sale under a prior judgment with notice of the agreement and where the machinery was still in place at the time of sale. *Coleman v. Lewis* is still stronger. There a brother built a dwelling-house on his own land for his sister, she to pay the cost of erection and to live in it as long as she pleased, with the right to remove it if she saw fit, or if he sold his lot or it was sold from him. This agreement was held to prevent annexation to the realty, and was good against a purchaser at sheriff's sale, with notice. It will be observed that in that case the structure was not one for the convenience of trade, was erected by the owner himself on his own land out

of materials provided by himself and was firmly attached to the land, and was to continue an indefinite time, dependent on the will of the sister. The intention not to make it parcel of the realty was the sole and governing fact of the case. In the case now before us, the owner of the realty was not the owner of the boilers and did not become so by purchase. He was a mere bailee of personalty for hire without an intention to annex to the realty, and with a positive agreement for their return to the owner of the chattels. It has no resemblance to the case of *Roberts v. Dauphin County Bank*, 7 Harris 7. There the engine was erected by the owner of the realty as a part of it, and it thus enured to the benefit of the mortgagee. He could not sever it without waste, and his sale, therefore, without separation and removal did not convert it into personalty without the consent of the mortgagee. But in our case, there being no annexation, the boilers never enured to the benefit of the mortgagees."

In Vail v. Weaver, 132 Pa. 363, the Supreme Court, in a per curiam opinion, held:

"The principal question in this case was, whether the machinery and fixtures of the electric plant, which were placed in the tack-works, were placed there permanently or not. If they were temporary fixtures, placed there for a temporary purpose, their sale under the writ of fieri facias passed a good title. Mere physical annexation is no longer the rule. It is a question of intention. The intention to annex, whether rightfully or wrongfully, is the legal criterion: *Hill v. Sewald*, 53 Pa. 271; *Seeger v. Pettit*, 77 Pa. 437; *Morris' App.*, 88 Pa. 368. This question was submitted to the jury by the learned court below under adequate instructions, and their verdict ends the case."

In the statute the words "all real estate" are followed by the videlicet "to wit, houses". The generality of the term "all real estate" is narrowed down to com-

prehend only such houses as are real estate in contemplation of law. To be taxable as real estate, a house must be connected with the freehold and on part of it. Bouviers Law Dictionary defines a house as a place for the habitation and dwelling of man. A house trailer is within that definition. However, under the statute to be taxable, a house must be real estate. From the facts in the instant case, we conclude that the house trailers which were assessed to the owner of the land are not a part of his real estate. The assessment of the trailers in the name of the owner of the land cannot be sustained. We are not to be understood as holding that in every situation house trailers may not become real estate for tax purposes. It is a matter of common knowledge that in many instances trailers are taken off the highway and permanently affixed to the land so as to become a permanent place of abode or habitation. In the instant case the owners of the trailers secured registration plates for their vehicles. This indicated an intention to move the trailers over the highways. This fact considered, with the other facts in the case, rebut any intention to permanently affix them to appellant's land so as to make the trailers realty under the statute. The arrangement between the owners of the trailers and the owner of the land clearly rebuts any intention on their part to permanently annex the trailers to the land. If the trailers are attached to the land so as to become a part of it, title would vest in the owner of the land. It is not contended that Mason owns the trailers either in fact or by operation of law. We are not passing upon the question as to whether or not the trailers can be assessed as real estate in the names of the owners of the trailers.

### Order

And now, to wit, March 2, 1950, the appeal of Harry B. Mason from the assessment is sustained, and the

assessment is modified by striking therefrom "4 trailers at $250.00, $100.00, $180.00, $300.00—$830.00." As so modified, the assessment is affrmed.